**James Richard ODLE, Petitioner,**

v.

**Arthur CALDERON, in his capacity as Warden of California State Prison at San Quentin, Respondent.**

**No. C–88–4280–CAL.**

United States District Court, N.D. California.

March 29, 1995.

Walter T. Johnson, Warren W. Wilson, Lillick & Charles, San Francisco, CA, for petitioner.

Dane R. Gillette, State of Cal., Office of Atty. Gen., San Francisco, CA, for respondent.

## ORDER GRANTING PARTIAL SUMMARY JUDGMENT

LEGGE, District Judge.

### *DEATH PENALTY CASE*

### I

Petitioner James Richard Odle is a prisoner of the State of California, in state custody under sentence of death. He first sought habeas relief in this court in 1988. After briefing, argument and review of the state-court record and the applicable legal authorities, the court denied the seven claims in his original petition. *See Odle v. Vasquez,* 754 F.Supp. 749 (N.D.Cal.1990).

Odle moved for reconsideration. Before this court ruled on that motion, the United States Supreme Court decided *McCleskey v. Zant*, 499 U.S. 467, 111 S.Ct. 1454, 113 L.Ed.2d 517 (1991), which substantially limited the ability of habeas petitioners to raise new claims in a subsequent petition. In light of *McCleskey*, the court allowed Odle to amend his then-pending first petition, which had not become final. Odle then took several years to exhaust his new claims in state court, and then returned to this court with an amended petition raising 56 claims.[1] This order is the first to rule on the merits of the claims in the amended petition.[2]

## II

The case is now before the court on a motion by respondent for summary judgment as to petitioner's claims. The court held a hearing on April 28, 1994, and orally granted summary judgment on claims M, N, R, T, V, X, Y, Z, AA, CC, EE, FF, GG, LL, WW, XX, ZZ and AAA.[3]

Following that hearing, the parties agreed that certain additional issues could be submitted for decision on the record without oral argument. The court has now considered those issues and grants summary judgment on claims U, W, BB, DD, II, JJ, MM, NN, OO, QQ, RR, SS, TT, UU and BBB as well.

This order states the reasons for this court's decisions.

## III

The state asserts, as a basis for summary judgment on numerous claims, that *Teague v. Lane*, 489 U.S. 288, 109 S.Ct. 1060, 103 L.Ed.2d 334 (1989), precludes federal habeas relief. Specifically, respondent argues that Odle seeks relief that is barred by *Teague* because it would require this court to apply a new rule of criminal procedure. Odle responds that the state has not met its burden

on summary judgment of showing that *Teague* bars relief on his claims as a matter of law.

The United States Supreme Court held in *Teague* that new rules of criminal procedure generally may not be announced or applied on federal habeas corpus review. *Teague*, 489 U.S. at 307, 109 S.Ct. at 1073–74. The Court has developed a three-step analysis to determine whether a petitioner's claim seeks to apply a new rule retroactively. *See Caspari v. Bohlen*, —— U.S. ——, ——, 114 S.Ct. 948, 953, 127 L.Ed.2d 236 (1994). First the date on which petitioner's conviction and sentence became final must be determined. Second, the state of the law must be surveyed to determine whether, at the time the conviction became final, a state court "would have felt compelled by existing precedent to conclude that the rule [petitioner] seeks was required by the Constitution." *Saffle v. Parks*, 494 U.S. 484, 488, 110 S.Ct. 1257, 1260, 108 L.Ed.2d 415 (1990). Third, if the petitioner seeks to apply a new rule, it must be determined whether the rule comes within either of two narrow exceptions to *Teague*. It is clear from a review of the cases that have addressed retroactivity that the *Teague* analysis is complex. *See, e.g., Graham v. Collins*, —— U.S. ——, 113 S.Ct. 892, 122 L.Ed.2d 260 (1993); *Stringer v. Black*, 503 U.S. 222, 112 S.Ct. 1130, 117 L.Ed.2d 367 (1992); *Penry v. Lynaugh*, 492 U.S. 302, 109 S.Ct. 2934, 106 L.Ed.2d 256 (1989).

█ Because respondent seeks summary judgment, it carries the burden of proof. To prevail, it must "show that [it] is entitled to a judgment as a matter of law" on the basis of *Teague*. Fed.R.Civ.P. 56(c). To make the requisite showing, respondent must conduct the analysis set forth in *Caspari* and other Supreme Court cases following *Teague*.

Respondent has determined when Odle's judgment became final for purposes of *Teague*. *See* Memorandum of Points and Author-

---

1. Odle includes in his amended petition the seven claims that this court denied in its 1990 order, even though he moved for reconsideration of the court's order on only one of these claims.

2. The court follows the claim lettering system used in the amended petition, dated March 16, 1993.

3. After further consideration and in light of the court's decision to withhold determination of Odle's closely related Claim H, the court has decided not to grant summary judgment on Claims M and N at this time.

ities in Support of Motion for Summary Judgment at 11. Beyond that, respondent raises *Teague* in one or two sentences after discussing the merits of many of Odle's claims.[4] *See e.g.,* Memorandum of Points and Authorities in Support of Motion for Summary Judgment at 23, 52, 53, 56, 63, 68, 72–77, 93–95. Respondent has not outlined the state of the law relevant to Odle's claims at the relevant time. It has not analyzed the claims it seeks to bar in light of the applicable law at that time. Respondent has not discussed whether Odle's claims fall within either *Teague* exception.

Because respondent has not satisfied this court of its analysis required by *Caspari,* the state has not met its burden on summary judgment. Its motion on *Teague* grounds is therefore DENIED without prejudice.

## IV

Respondent argues that Odle has procedurally defaulted many of the claims presented in his amended petition. Odle maintains that the claims are not procedurally defaulted and, alternatively, that the procedural rules relied upon by the state do not preclude federal habeas review.

■ A state procedural rule cannot bar federal habeas review unless it constitutes an independent and adequate basis for the state court's decision. *Coleman v. Thompson,* 501 U.S. 722, 729, 111 S.Ct. 2546, 2553–54, 115 L.Ed.2d 640 (1991). Whether a state rule satisfies the independent and adequate requirement is a question of federal law. *Johnson v. Mississippi,* 486 U.S. 578, 587, 108 S.Ct. 1981, 1987, 100 L.Ed.2d 575 (1988).

The California Supreme Court order denying Odle's third habeas petition relied both on the merits and on procedural rules. The order stated, "The court has considered each of the 46 claims raised in the third post-appeal petition in this matter (filed May 8, 1992), and denies the entire petition (i.e., claims "A" through "TT")[5] on the merits." *In re Odle on Habeas Corpus,* No. S026511,

1992 Cal. LEXIS 5330 (California Supreme Court, October 28, 1992). In the next four paragraphs of the order, the court issued an alternative procedural ruling, beginning with the statement, "In addition, the court denies claim[s] . . ." and concluding with citations to state case law.

■ Under *Coleman,* this court may not review the merits of Odle's habeas claims if the state court's alternative procedural holdings set forth an adequate and independent basis for its decision.

A procedural default is not "independent" if, for example, the state procedural bar depends upon an antecedent determination of federal law. Similarly, the procedural default is not "adequate" if the state courts themselves bypass the petitioner's default and consider his claims on the merits, if the procedural rule appears to be discretionary, or, ordinarily, if the state fails to assert an interest in compliance with its procedural rules in the petitioner's federal habeas proceedings.

*Harmon v. Ryan,* 959 F.2d 1457, 1461 (9th Cir.1992).

### (1) Reliance on State Procedural Rules

■ A federal habeas court may review a claim on the merits unless the state court made a "'clear and express' statement that it relied upon procedural grounds as an alternative holding." *Carriger v. Lewis,* 971 F.2d 329, 333 (9th Cir.1992) (en banc) (citing *Thomas v. Lewis,* 945 F.2d 1119, 1122–23 (9th Cir.1991)). When the order denying state habeas relief is ambiguous, a federal court will presume that the decision relied on federal law if it fairly appears to rest primarily on federal law or to be interwoven with federal law. *Coleman,* 501 U.S. at 735, 111 S.Ct. at 2557; *Thomas,* 945 F.2d at 1122.

■ Ninth Circuit law on the independence of alternative procedural holdings, like those at issue in *Odle,* is still evolving. The circuit has held that the California Supreme

---

4. Respondent does offer a more complete *Teague* analysis for Claim H, in which Odle alleges that the state failed to disclose its investigation of Dr. Berg. The court will address respondent's *Teague* defense to Claim H in a subsequent order.

5. This designation of claims corresponds to the *state* habeas petition. The claims were relettered in this federal petition.

Court's denial of a habeas petition without comment or citation is a decision on the merits of the federal claims. A federal court may thus review the merits of habeas claims that the California court denies without comment. *Hunter v. Aispuro,* 982 F.2d 344, 347–48 (9th Cir.1992) (citing *Harris v. Superior Court,* 500 F.2d 1124, 1128 (9th Cir.1974) (en banc)). On the other hand, when the California Supreme Court denies a habeas petition with a citation to a state procedural rule, it denies the petition on an independent state ground. *Hunter,* 982 F.2d at 348; *Harris* at 1128. *See also Thomas,* 945 F.2d at 1123 (procedural ground is· independent when state court discussed Arizona procedural bar then stated, "Even if [Thomas'] claims were not waived, relief would be denied" and considered claim on merits). *But cf. Karis v. Vasquez,* 828 F.Supp. 1449, 1459 (E.D.Cal. 1993) (state grounds not independent when the order gave reasons, supported by state-law citations, for the default and addressed claims on the merits).

Following *Hunter* and *Harris,* this court concludes that the California Supreme Court's denial of Odle's habeas petition rested on state procedural grounds. As the discussion below indicates, however, the state procedural rule relied upon does not preclude federal habeas review on the merits because the California Supreme Court has not applied the rule in a consistent and uniform manner.

### (2) Adequacy of State Procedural Rules

■ Adequacy requires that the state procedural rule must be clearly applicable, firmly established and regularly followed and foreseeable. *See, e.g., Ford v. Georgia,* 498 U.S. 411, 423–24, 111 S.Ct. 850, 857–58, 112 L.Ed.2d 935 (1991); *James v. Kentucky,* 466 U.S. 341, 348–49, 104 S.Ct. 1830, 1835–36, 80 L.Ed.2d 346 (1984); *Ulster County Court v. Allen,* 442 U.S. 140, 150–51 nn. 8–9, 99 S.Ct. 2213, 2221 nn. 8–9, 60 L.Ed.2d 777 (1979). *See also Dugger v. Adams,* 489 U.S. 401, 410 n. 6, 109 S.Ct. 1211, 1217 n. 6, 103 L.Ed.2d 435 (1989) (procedural bar must be "consistently or regularly applied"); *Karis,* 828

F.Supp. at 1467 (rule must be applied in "vast majority" of cases).

■ The California Supreme Court's order in *Odle* included an alternative ruling denying thirty-one claims because they were not raised on direct appeal. *Odle,* No. S026511, 1192 Cal. LEXIS 5330 (citing *In re Dixon,* 41 Cal.2d 756, 759, 264 P.2d 513 (1953)). At the time of Odle's direct appeal and habeas petition, the California Supreme Court treated *Dixon* as "merely a discretionary policy governing the exercise of the reviewing court's jurisdiction to issue the writ." *See Kimble v. Vasquez,* CV 90–4826 SVW (C.D.Cal. August 25, 1993) at 3; *Karis,* 828 F.Supp. at 1467 and cases cited therein; *Murtishaw v. Vasquez,* CV 91–508 OWW (E.D.Cal.1993) at 6–7 and cases cited therein; *see also Siripongs v. Calderon,* 35 F.3d 1308, 1318 (9th Cir.1994) (California procedural bars are discretionary and not consistently applied) *cert. denied* —— U.S. ——, 115 S.Ct. 1175, 130 L.Ed.2d 1127 (1995). This court agrees with the reasoning of three other district courts that the *Dixon* procedural rule has not been uniformly and regularly applied by the California Supreme Court. *See Kimble; Karis,* 828 F.Supp. 1449; and *Murtishaw.*

The California Supreme Court recently held that it would construe and apply the *Dixon* rule more stringently and consistently in the future, virtually admitting that past precedent had been to the contrary. *See In re Harris,* 5 Cal.4th 813, 828–34, 21 Cal. Rptr.2d 373, 855 P.2d 391 (1993).[6] The court's plan to apply *Dixon* more strictly as of 1993 cannot pose an effective procedural bar to issues raised in Odle's habeas petition (decided October 29, 1992) that were not raised on direct appeal (decided in 1988). *See Ford,* 498 U.S. at 424–25, 111 S.Ct. at 857–58 (procedural rule must be firmly established at the time in question to bar federal habeas review); *Siripongs,* 35 F.3d at 1318. Because the California Supreme Court did not apply the *Dixon* rule regularly and uniformly at the time of Odle's direct appeal and state habeas proceedings, the rule is not

---

**6.** Although the *Harris* opinion discusses the *Waltreus* rule, that court mentions in a footnote that much of the discussion applies also to the *Dixon*

rule. *Harris,* 5 Cal.4th at 825 n. 3, 21 Cal. Rptr.2d 373, 855 P.2d 391.

adequate to bar federal habeas review of Odle's claims.

## V

This court now turns to the separate analysis of each of the claims resolved in this order.

### Claim R

Odle claims that his representation was tainted by his co-counsel's conflict of interest. Because co-counsel William Lowe was retained by the Public Defender's Office, Odle argues, Lowe was infected by the office's conflict of interest. The state responds that Lowe was never an employee of the office. For this reason, and because of the type of conflict that permitted the office to withdraw from the case, Lowe's continued representation of Odle does not constitute a conflict of interest, according to the state.

Lowe was recruited by the Contra Costa County Public Defender's Office specifically to work on Odle's case.[7] Lowe assisted Odle's first counsel, Patrick Meistrell of the Public Defender's Office. After Meistrell had been working on the case for about a year, he resigned from the Public Defender's Office because he suffered a relapse of mental illness. 5/5/81 RT 24. The Public Defender's Office then argued that it had a conflict of interest and asked the court for permission to withdraw from the case. 5/8/81 RT 31–32; IV CT 1143. The court granted the Public Defender's request.[8] 5/8/81 RT 32. New counsel was then appointed, but William Lowe continued to work on the case. 5/22/81 RT 43; V CT 1521.

To show a Sixth Amendment violation based on conflict of interest, a petitioner must establish both an actual conflict of interest and an adverse effect on the lawyer's performance. *See Cuyler v. Sullivan,* 446 U.S. 335, 348, 100 S.Ct. 1708, 1718, 64 L.Ed.2d 333 (1980). A petitioner must show that "some effect on counsel's handling of particular aspects of the trial was 'likely.' " *United States v. Miskinis,* 966 F.2d 1263, 1268 (9th Cir.1992) (citing *Mannhalt v. Reed,* 847 F.2d 576, 583 (9th Cir.1988)); *see also Sanders v. Ratelle,* 21 F.3d 1446, 1452 (9th Cir.1994) (attorney's conduct "seem[ed] to have been influenced by the suggested conflict").

Odle has not satisfied this test. In declarations submitted to the court, both Lowe and Gagen state that they know of no actual conflict of interest that caused the Public Defender's Office to withdraw from Odle's case. Ex. 34 at 2 (Gagen declaration); Ex. 35 at 4 (Lowe declaration). The conflict was, by Gagen's and Lowe's accounts, between the office and Meistrell. Ex. 34 at 2; Ex. 35 at 3. Furthermore, Odle has not shown how trial counsel's performance was adversely affected by Lowe's earlier work on the case with Meistrell as lead counsel. Based on the law and these undisputed facts, summary judgment is GRANTED in favor of respondent.

### Claim T

Odle claims that he was denied his right to due process and to a fair trial when the trial court denied his motion to sever the Aguilar and Swartz murder counts. The state responds that Odle has not stated a constitu-

---

7. Lowe was recruited pursuant to California Penal Code § 987.9, which authorizes "the specific payment of investigators, experts, and others for the preparation of the defense" of indigent defendants in capital cases. V CT 1520; Ex. 35 at 1–2.

8. The office's initial request, based on an affidavit of conflict seeking to withdraw from the case for "other reasons," was denied. IV CT 1139. A hearing was held to determine whether the affidavit stated good cause for the office to withdraw. An attorney representing the office told the judge that Meistrell was ill and if another attorney were assigned to the case, "it would present serious problems when Mr. Meistrell re-

turns to work." 3/31/81 RT 3. The Public Defender's Office also offered in camera statements and a confidential memorandum of points and authorities in support of its affidavit. 4/9/81 RT at 9–10.

The court did not find good cause for the affidavit of conflict and denied the office's request to withdraw from representing Odle. *Id.* at 17. A month later, the office filed another affidavit seeking to withdraw from the case. This affidavit stated that the office could not represent Odle because it had a conflict of interest. 5/8/81 RT 32. The court accepted this affidavit on its face and permitted the office to withdraw. *Id.*

tional violation. Respondent argues that Odle cannot show a due process violation because the evidence of the two murders is cross-admissible.

■ A federal habeas court may grant relief on a claim that severance was improperly denied if the joinder rendered the trial fundamentally unfair in violation of constitutional guarantees of due process. *Featherstone v. Estelle*, 948 F.2d 1497, 1503 (9th Cir.1991). Whether evidence on one count would be admissible on the other count is relevant to a due process analysis of the denial of a motion to sever. Where evidence is cross-admissible, it is more difficult for a defendant to show that he was prejudiced by a joint trial. *See Featherstone*, 948 F.2d at 1503.

■ It is undisputed that evidence of the Aguilar murder would have been admissible in a separate trial for the Swartz murder.[9] This cross-admissibility undercuts Odle's allegations of prejudice to his Swartz murder defense that might have arisen from joinder of the Aguilar offense.

Furthermore, the trial court instructed the jury to decide each count separately. 23 RT 125. Odle's counsel and the prosecutor both told the jury to consider the crimes separately and discussed the differences between the two murders. 23 RT 37, 55, 67. *See Featherstone*, 948 F.2d at 1503 (joinder did not violate due process even though evidence would not have been cross-admissible; the jury was instructed to consider the counts separately and the verdict showed that jury discriminated between the counts).

Based on the trial court's instructions to the jury and the cross-admissibility of the evidence, the court concludes on a summary

judgment standard that the joint trial did not violate Odle's right to due process.

### Claim U

■ Odle claims that the trial court's failure to instruct the jury that it could not use bad-character evidence violated his right to due process. Specifically, he argues that the trial court did not instruct the jury that it could not use the Aguilar murder to show his predisposition to commit the Swartz murder.[10] Because the jury was not so instructed and because the prosecutor used the Aguilar murder to show Odle's predisposition to murder Swartz, Odle argues, the prosecutor's burden of proof for the Swartz murder was impermissibly lightened.

The state responds that the Constitution does not forbid the use of bad-character or predisposition evidence.[11] It also argues that the jury was instructed to consider each offense separately. Furthermore, the state contends, the prosecutor's argument was relevant to the special circumstance for the Swartz murder of killing to avoid lawful arrest.

Considering the other instructions given and defense counsel's argument, the court concludes that the trial court's failure to instruct on proper uses of predisposition evidence did not violate Odle's right to due process. The court instructed the jury that "[e]ach count charges a different offense. You must decide each count separately." 23 RT 125. During argument, trial counsel repeatedly told the jury to consider the two crimes separately and distinguished them. *See* 23 RT 37, 55, 67.

■ Nor did the prosecutor's argument linking the two murders render Odle's trial fundamentally unfair.[12] Odle does not dis-

---

**9.** *See People v. Odle*, 45 Cal.3d 386, 401, 247 Cal.Rptr. 137, 754 P.2d 184 (1988).

**10.** The trial court did instruct the jury about limitations on the use of predisposition evidence. By its terms, however, the instruction applied only to evidence "that the defendant committed crimes *earlier in his life other than those for which he is on trial.*" 23 RT 103 (emphasis added).

**11.** As both parties acknowledge, the Supreme Court has not decided this issue. *See Estelle v.*

*McGuire*, 502 U.S. 62, 75 n. 5, 112 S.Ct. 475, 484 n. 5, 116 L.Ed.2d 385 (1991).

**12.** In his discussion of the Swartz murder, the prosecutor said:

What's the first thing we know about Jim Odle at the time of the Swartz killing? He is a proven murderer. He has already brutally murdered somebody in the most awful fashion.... And so he is a proven murderer. But once you kill somebody three or four days before it's a lot easier to kill that second one, especially when you are worried about your

pute that the Aguilar murder was relevant to Odle's motive and intent for the Swartz murder and to the special circumstance of murder to avoid lawful arrest. *See Estelle v. McGuire*, 502 U.S. 62, 70, 112 S.Ct. 475, 481, 116 L.Ed.2d 385 (1991) (due process not violated when trial court admitted evidence of victim's prior injuries that was relevant to battered child syndrome). *Cf. McKinney v. Rees*, 993 F.2d 1378 (9th Cir.1993) (defendant denied due process when trial court admitted evidence of defendant's fondness for knives that was not relevant to the crime). The prosecutor thus had an evidentiary basis for tying the Aguilar murder to the Swartz murder. The court concludes that his argument did not violate due process.

For these reasons and based on undisputed facts, the court concludes that due process did not require the trial court to instruct the jury that it could not consider the Aguilar murder as evidence of Odle's predisposition to commit the Swartz murder. Nor did the prosecutor's argument violate due process. Summary judgment in favor of respondent is therefore GRANTED.

*Claim V*

Odle challenges the trial court's decision denying his motion to suppress evidence. The state argues that *Stone v. Powell*, 428 U.S. 465, 96 S.Ct. 3037, 49 L.Ed.2d 1067 (1976), bars federal habeas review of this claim.[13] Odle argues in response that *Stone* does not preclude review of his claim because he was denied a full and fair hearing on his Fourth Amendment claim.

■ Fourth Amendment claims are not cognizable in federal habeas unless the petitioner was "denied an opportunity for a full and fair litigation of that claim at trial and on direct review." *Stone*, 428 U.S. at 494, 96 S.Ct. at 3053. Since respondent has raised

*Stone* as a defense, Odle has the burden of pleading that he was denied a full and fair opportunity to litigate the claim in state court. If Odle had this opportunity, this court need not examine the merits of his Fourth Amendment claim. *See Mack v. Cupp*, 564 F.2d 898, 901 (9th Cir.1977).

■ Odle claims that his suppression hearing was not full and fair because his attorney at the time, Patrick Meistrell, was incompetent and ineffective. To prevail on such a claim, however, Odle must show both that counsel's performance was substandard and that he was prejudiced. *See Kimmelman v. Morrison*, 477 U.S. 365, 375, 106 S.Ct. 2574, 2583, 91 L.Ed.2d 305 (1986).

■ Odle's argument is not supported by the record. Trial counsel's preparation and presentation of the suppression claim was clearly adequate.[14]

Counsel filed a pre-trial motion to suppress evidence under California Penal Code § 1538.5 on October 14, 1980. In support of the motion, he filed a twenty-seven-page memorandum of points and authorities challenging the search of the house, van and motel and the validity of three search warrants. CT 891–917. The prosecutor opposed the motion. CT 931–54. During the hearing, counsel made several proper objections, some of which the court sustained. Trial counsel actively examined and cross-examined the six witnesses. RT 78–134. Counsel filed a reply. CT 967–77. The court heard more witnesses and the parties' arguments on October 22, 1980. RT 150–97.

The trial court denied the motion on January 16, 1981. RT 330. Counsel filed a petition for a writ of mandate, which was denied on March 18, 1981. CT 1112. The issue was not raised on Odle's direct appeal.

own rear end and you're trying to get away. And that's what the killing of Swartz is all about.
22 RT 118–19.

**13.** Respondent also argues that Claim V is procedurally barred. The California Supreme Court held that the claim was not cognizable on habeas corpus. *Odle*, No. S026511, 1992 Cal. LEXIS 5330 (citing *In re Terry*, 4 Cal.3d 911, 926, 95 Cal.Rptr. 31, 484 P.2d 1375 (1971)). *Terry*, like *Stone*, precludes habeas review of an alleged

Fourth Amendment violations. Because Odle argues that his Fourth Amendment claim was not fully and fairly litigated, however, *Terry* does not bar federal habeas review.

**14.** Because Odle fails to show that counsel's performance was inadequate, this court need not address whether it was also prejudicial. *See Strickland v. Washington*, 466 U.S. 668, 697, 104 S.Ct. 2052, 2069–70, 80 L.Ed.2d 674 (1984).

Odle alleges no specific flaws in the suppression hearing or in counsel's performance. Because the court finds that trial counsel's performance was adequate, summary judgment is warranted in favor of respondent.

### Claim W

██ Odle argues that the jury instruction defining reasonable doubt, combined with the prosecutor's argument about the definition, denied him due process. Specifically, he claims that the instruction confused the jury and unconstitutionally lightened the prosecutor's burden of proof because it defined reasonable doubt in terms of "moral evidence" and "moral certainty." The state responds that the instruction does not run afoul of the Constitution and was not reasonably likely to have misled the jury.

The Supreme Court very recently upheld the constitutionality of California's reasonable doubt instruction in the context of the case before it. *See Victor v. Nebraska,* —— U.S. ——, 114 S.Ct. 1239, 127 L.Ed.2d 583 (1994). Although the Court criticized the use of the phrases "moral evidence" and "moral certainty," it held that other instructions given in that case made it clear that the jury must render a verdict based on the evidence.

Odle's jury was given the same reasonable doubt instruction that the Court criticized but upheld in *Victor*.[15] With the same language used in *Victor*, Odle's trial court also instructed the jury that it must decide based on the evidence presented, rather than passion or prejudice. 23 RT 94, 95, 97; *Victor,* —— U.S. at ——, 114 S.Ct. at 1246–48.

Presented here with a reasonable doubt instruction identical to the one upheld in *Victor*, this court concludes that the instruction did not deny Odle due process.[16] Based on *Victor* and the record in this case, the court GRANTS summary judgment in favor of respondent.

### Claim X

██ Odle argues that the court gave the jury an erroneous instruction on implied malice for the Aguilar murder. In particular, Odle maintains that the instruction did not require the jury to find that he was subjectively aware that his conduct was likely to result in death. The state responds that Odle's challenge to the malice instruction does not establish a constitutional violation.

Odle's argument that the implied malice instruction in itself did not require a finding of subjective awareness may have some merit. *But see People v. Dellinger,* 49 Cal.3d 1212, 1217, 264 Cal.Rptr. 841, 783 P.2d 200 (1989) (language of instruction, although outdated, adequately instructs the jury that it must find whether defendant was subjectively aware that his conduct was life-threatening). Based on the facts of this case, however, the court concludes that if the jury applied the implied malice instruction, it also must have found the requisite intent.

The jury applied the challenged instruction to reach its first-degree murder verdict only if it relied on a theory of lying-in-wait.[17] For the jury to have found lying-in-wait, it must have found that Odle *intended* to cause "bod-

---

**15.** The California reasonable doubt instruction that was given in *Victor* and *Odle* was as follows:

A defendant in a criminal action is presumed to be innocent until the contrary is proved.
In the case of a reasonable doubt whether his guilt is satisfactorily shown he is entitled to a verdict of not guilty. This presumption places upon the State the burden of proving him guilty beyond a reasonable doubt.
Reasonable doubt is defined as follows: It is not a mere possible doubt, because everything relating to human affairs and depending on *moral evidence* is open to some possible or imaginary doubt. It is that state of the case which, after the entire comparison and consideration of all the evidence, leaves the minds of the jurors in that condition that they cannot say they feel an abiding conviction to a *moral certainty* of the truth of the charge.

23 RT 108; *Victor,* —— U.S. at ——, 114 S.Ct. at 1244 (emphasis added).

**16.** Odle also argues that the prosecutor's argument to the jury about reasonable doubt aggravated the questionable constitutionality of the instruction. The record does not support Odle's contention. The prosecutor essentially restated the reasonable doubt instruction in his argument. Although he referred to "moral evidence," he also repeatedly emphasized "evidence in the courtroom" and the evidence of the Swartz shooting and of Odle's mental capacity. *See, e.g.,* 22 RT 84–86.

**17.** The jury alternatively could have reached its first-degree murder verdict based either on premeditation or on lying-in-wait and express malice. *See* 23 RT 114–15.

ily harm involving a high degree of probability that it will result in death." 23 RT 117. If the jury applied the implied-malice instruction, then, it necessarily found that Odle was at least subjectively aware that his conduct was likely to result in death.

The court concludes that the challenged instruction did not violate Odle's right to due process. Summary judgment in favor of respondent is GRANTED.

### Claim Y

Odle claims that the prosecution's theory of lying-in-wait murder was supported only by the uncorroborated testimony of his accomplice, Bryan Odle.[18]

 As respondent points out, corroboration of accomplice testimony is not a federal constitutional requirement. *Harrington v. Nix*, 983 F.2d 872, 874 (8th Cir.1993); *see also Lisenba v. California*, 314 U.S. 219, 225–227, 62 S.Ct. 280, 284–285, 86 L.Ed. 166 (1941) (Fourteenth Amendment does not bar state from construing and applying laws on accomplice testimony); *United States v. Necoechea*, 986 F.2d 1273, 1282 (9th Cir.1993) (accomplice's uncorroborated testimony is sufficient to sustain a conviction unless it is incredible or insubstantial on its face); *United States v. Lopez*, 803 F.2d 969, 973 (9th Cir.1986) (evidence was sufficient to support conviction even though accomplice's testimony was the only evidence placing defendant at the scene of the robbery and implicating him in the extortion). Thus, Odle's claim that his murder conviction relies solely on Bryan's uncorroborated testimony does not establish a basis for habeas relief.

 Odle also argues that the jury instruction on accomplice corroboration denied him the right, guaranteed by state law, not to be convicted based solely on accomplice testimony. State-law violations are cognizable on federal habeas review when they arbitrarily deny a defendant a right to which he is entitled under state law. Arbitrary deprivations of state-law entitlements violate a defendant's right to due process. *See, e.g., Hicks v. Oklahoma*, 447 U.S. 343, 100 S.Ct. 2227, 65 L.Ed.2d 175 (1980); *Kealohapauole*

*v. Shimoda*, 800 F.2d 1463, 1465 (9th Cir. 1986); *Hines v. Enomoto*, 658 F.2d 667, 672 (9th Cir.1981).

 California's corroboration requirement does not create a state-law entitlement to corroboration of every element of the crime. Rather, state law on accomplice testimony requires only that the corroboration connect the defendant to the crime and convince the jury that the accomplice is truthful. *See, e.g.,* Cal.Penal Code § 1111; *People v. Fauber*, 2 Cal.4th 792, 834, 9 Cal.Rptr.2d 24, 831 P.2d 249 (1992); *People v. Price*, 1 Cal.4th 324, 443–44, 3 Cal.Rptr.2d 106, 821 P.2d 610 (1991).

 Odle's jury was instructed that Bryan's testimony must be corroborated by "independent evidence which tends to connect the defendant with the commission of the offense." 23 RT 110. The court concludes that this language satisfied the state-law requirement.

 Furthermore, Bryan's testimony was corroborated in accordance with California law. The testimony of several witnesses tended to connect Odle with the murder of Aguilar. *See, e.g.,* 14 RT 117–46 (Cleona Bennett's testimony that Odle told Bryan he had lost the knife and that Odle wrote two notes indicating that he committed the murder); 14 RT 33 (Officer Hodges' identification of Odle as the driver of the van that had been parked at Aguilar's house at the time of the murder); 13 RT 118–121 (LeaVa Wallace's testimony that Odle's appearance and dress were consistent with that of the person she saw around van parked in Aguilar's driveway at the time of the murder).

Because Odle has not shown a constitutional violation based on a due process right either to corroboration of accomplice testimony or to an instruction on corroboration, the state is entitled to judgment as a matter of law. The court GRANTS summary judgment in favor of respondent.

---

**18.** As noted in the discussion of Claim X, Odle's first-degree murder conviction for killing Aguilar

rests on one of two alternative theories: premeditation or lying-in-wait.

## Claim Z

Odle claims that the uncorroborated testimony of Bryan Odle does not constitute sufficient evidence to support a conviction for lying-in-wait murder. The state argues that uncorroborated accomplice testimony is sufficient to support a conviction.[19]

■ The uncorroborated testimony of an accomplice is sufficient to support a conviction unless the testimony is incredible or insubstantial on its face. *See, e.g., United States v. Necoechea,* 986 F.2d 1273, 1282 (9th Cir.1993). Bryan Odle's testimony was not incredible or insubstantial on its face. Bryan testified that he and Odle entered Aguilar's dark, unlocked house.[20] Odle stood near the hallway; when Aguilar came out of her locked bedroom to answer the phone, Odle hit her with a tire iron. 15 RT 159. They were at Aguilar's house for a total of approximately twenty minutes. 15 RT 163. As discussed in Claim Y, Bryan's testimony was corroborated in part by other witnesses.[21]

Odle would nonetheless be entitled to habeas relief if the evidence, including Bryan's uncorroborated testimony, was insufficient to support his conviction. The evidence would not be sufficient if "it is found that upon the record evidence adduced at the trial no rational trier of fact could have found proof of guilt beyond a reasonable doubt." *Jackson v. Virginia,* 443 U.S. 307, 324, 99 S.Ct. 2781, 2791–2792, 61 L.Ed.2d 560 (1979).

■ For lying-in-wait murder, California law and the instructions given at trial required proof of: 1) waiting and concealment of sufficient duration to show the equivalent of premeditation or deliberation and 2) malice. 23 RT 115–17; CT 1610. This court concludes that the testimony of Bryan Odle

and other witnesses, as described above, could support the jury's finding of proof beyond a reasonable doubt of these elements.

For these reasons, the state is entitled to judgment as a matter of law.

## Claim AA

Odle claims that he was denied his right to a fair trial because he did not receive sufficient notice that the prosecution would present a lying-in-wait theory of first-degree murder. Respondent argues that Odle's trial counsel had adequate actual notice.

■ The critical issue in deciding whether notice was constitutionally adequate is whether the defendant had sufficient actual notice to present a defense, ensure adversarial testing and produce an acceptable record. Actual notice may be found in the record of pre-trial proceedings, opening statements, testimony or jury instructions. *See, e.g., Morrison v. Estelle,* 981 F.2d 425 (9th Cir. 1992) (testimony and jury instructions gave defendant sufficient notice of robbery and felony-murder); *cf. Sheppard v. Rees,* 909 F.2d 1234, 1235–37 (9th Cir.1989) (defendant did not have sufficient notice when felony murder was never mentioned during pre-trial proceedings, opening statements, testimony or initial instruction conference).

■ The parties agree that the information did not charge Odle with lying-in-wait murder. But Odle was alerted just before trial to the lying-in-wait theory. Arguing at a pre-trial hearing that the victim's hearsay statements should be admissible, the prosecutor said:

> But the fact that she is afraid and doesn't like Mr. Odle tends to support the evidence that will be coming in that Mr. Odle had to *lie in wait* and set up a ruse to

---

**19.** The state also contends that even if the evidence were not sufficient, reversal is not required because Odle's murder conviction may rest on the alternative ground of premeditation. *See Griffin v. United States,* 502 U.S. 46, 112 S.Ct. 466, 116 L.Ed.2d 371 (1991) (general jury verdict that charges the commission of an offense by two means, one of which is unsupported by the evidence, does not require reversal). Because the court holds that the evidence was sufficient to support the lying-in-wait theory of first-degree murder, it does not address the state's alternative contention.

**20.** Bryan's testimony about the duration and nature of Odle's concealment was not corroborated. As discussed above, however (see Claim Y), his uncorroborated testimony is sufficient to sustain the conviction unless it is incredible or insubstantial on its face. *See United States v. Necoechea,* 986 F.2d 1273, 1282 (9th Cir.1993).

**21.** *See also* 15 RT 18 (William Moran testimony that Odle "was talking about he wanted to kill that bitch.")

lure her out of her bedroom where she had a locked door.... And it supports his state of mind that it was a *lying-in-wait first degree murder.*

13 RT 6 (emphasis supplied).

The prosecutor's opening statement on June 20, 1983, also gave trial counsel actual notice of the lying-in-wait theory. *See* 13 RT 13. The defense began its case on July 5 (20 RT 6) and presented its closing argument a week later, on July 12, 1983. 23 RT 1. Based on uncontroverted facts, Odle knew at least two weeks before he started presenting his case that the prosecutor would seek a murder conviction based on lying in wait.[22] Odle's trial counsel discussing lying in wait during his closing argument. *See* 23 RT 26–28, 31. The Ninth Circuit has held that two days' notice was sufficient to allow counsel to prepare closing argument based on a newly announced prosecution theory. *See Morrison*, 981 F.2d at 428.

The uncontroverted facts show that Odle had actual notice of the lying-in-wait theory of first-degree murder from the start of the trial. Applicable Ninth Circuit law shows that the state is entitled to judgment as a matter of law.

### Claim BB

Odle claims that the trial court had a duty to instruct the jury sua sponte on a lesser included offense. Specifically, he claims that the jury should have been instructed that it could have found three counts of joyriding, a misdemeanor, rather than the felony of "driving and taking a vehicle." Because the instruction was not given, Odle argues, his convictions on those counts were unconstitutional. The state responds that Odle's federal constitutional rights were not violated.

 The Ninth Circuit has held that a defendant is entitled to an instruction on lesser included offenses in certain circumstances. *See, e.g., United States v. Gutierrez*, 990 F.2d 472 (9th Cir.1993) (when instruction is supported by law and has a foundation in evidence) *overruled on other grounds, United States v. Armstrong*, 48 F.3d 1508 (9th Cir.1995); *United States v. Sneezer*, 983 F.2d 920 (9th Cir.1992) (when elements of lesser included offense are a subset of offense and are supported by the facts). Failure to instruct on a lesser included offense does not violate the Constitution, however, unless a capital-case jury is faced with an "all-or-nothing choice" between acquittal and a murder conviction. *See Schad v. Arizona*, 501 U.S. 624, 647, 111 S.Ct. 2491, 2505, 115 L.Ed.2d 555 (1991); *Beck v. Alabama*, 447 U.S. 625, 637–38 and n. 14, 100 S.Ct. 2382, 2390 and n. 14, 65 L.Ed.2d 392 (1980). Odle's trial court did not present the jury with such a choice by failing to instruct on joyriding as a lesser included offense.

Odle also claims that the failure to instruct on the lesser included offense affected the penalty phase of his trial. Had the jury convicted him of three misdemeanors instead of three felonies, he argues, it might have given the incidents less weight as an aggravating factor.

The court may review a sentence that was enhanced in reliance on an unconstitutional conviction. *See Campbell v. Kincheloe*, 829 F.2d 1453, 1461 (9th Cir.1987). Odle has not, however, established that his convictions for the three auto thefts were unconstitutional. Furthermore, the same jury that heard all the evidence and convicted Odle of the felony auto thefts also decided his penalty. The jury most likely based its penalty-phase determination about the aggravating weight of those incidents on the evidence it heard, not on the felony label given to the incidents. For these reasons, the court concludes that the lack of an instruction on the lesser included offense did not affect the reliability of the jury's penalty determination.

Because Odle has not established a federal constitutional basis for his claim, the court GRANTS summary judgment in favor of respondent.

### Claim CC

Odle argues that the trial court and the California Supreme Court denied him a fair trial by refusing to grant his motions and

---

22. A jury instruction request form completed by the prosecutor and dated June 30, 1983, also refers to the lying-in-wait instruction. CT 1673.

A notation on the instruction indicates that it was given with modifications as requested by the defense. CT 1610.

pre-trial writ seeking a change of venue.[23] Respondent argues that this court must presume correct the state court findings that the denial did not prejudice Odle. It also contends that Odle has not offered evidence to undermine those findings.

■ The Ninth Circuit recently set forth the appropriate procedure for a federal habeas court to evaluate a claim of prejudicial publicity. The court must

> make an independent review of the record to determine whether there was such a degree of prejudice against the petitioner that a fair trial was impossible.... [The] court must independently examine the news reports for volume, content, and timing to determine if they were prejudicial.... The prejudice requirement will be satisfied by a finding of: (1) presumed prejudice; or (2) actual prejudice.

*Jeffries v. Blodgett,* 5 F.3d 1180, 1189 (9th Cir.1993) (citations omitted). A court may presume prejudice in those "extremely rare" situations when "the record demonstrates that the community where the trial was held was saturated with prejudicial and inflammatory media publicity about the crime." *Harris v. Pulley,* 885 F.2d 1354, 1361 (9th Cir. 1988); *Jeffries,* 5 F.3d at 1189. To determine whether prejudice should be presumed, the court considers the nature and timing of the publicity in relation to the jury selection. *See Jeffries,* 5 F.3d at 1189.

■ The only evidence of media publicity before this court is the series of newspaper articles trial counsel Gagen filed as an appendix to his June 1981 motion for a change of venue. IV CT 1161–95. The trial court considered these articles and found that they, along with the other media coverage, were not "extensive or inflammatory." IV CT 1232. The trial court's factual findings about the publicity are entitled to a presumption of correctness. *See* 28 U.S.C. § 2254(d). Odle has not shown that the presumption does not apply. Presuming correct the trial court's

factual findings, the court concludes that there was no actual prejudice.[24]

■ In addition, Odle has not demonstrated actual prejudice. "Actual prejudice exists if the jurors demonstrated actual partiality or hostility that cannot be laid aside." *Harris,* 885 F.2d at 1363; *Jeffries,* 5 F.3d at 1189. Jurors need not, however, be completely ignorant of the facts and issues in the case.

■ During voir dire, the jurors were questioned individually about their exposure to media accounts of the case. *See, e.g.,* 3B RT 18, 30 (juror Spears); 5A RT 72 (juror Hazleton); 5B RT 5–6 (juror MacDonald); 6 RT 129–30 (forewoman Billecci); 8 RT 90 (juror Gottlieb). Trial counsel Gagen stated, at the end of jury selection, that five out of 175 jurors were excused because of concerns about their exposure to publicity about the case. 11 RT 62. Federal courts have found no actual prejudice when a much higher proportion of jurors was excused because of prejudicial publicity. *See, e.g., Jeffries,* 5 F.3d at 1189 (finding no prejudice where almost all the venire members had read about the trial and fourteen of 180 were excused for cause or potential prejudice; all the jurors swore they could decide impartially); *Murphy v. Florida,* 421 U.S. 794, 803, 95 S.Ct. 2031, 2037–2038, 44 L.Ed.2d 589 (1975) (no actual prejudice found where twenty of seventy-eight potential jurors were excused for partiality). Also, like Jeffries, Odle does not point to any specific juror "partiality and hostility" revealed during voir dire. *See Jeffries,* 5 F.3d at 1189.

After voir dire, the trial court found, based on the venire members' responses to questions about publicity about the case, that the venire was not biased. 11 RT 64. Under *Jeffries,* a trial court's factual finding about whether a jury is biased is entitled to a presumption of correctness. *Jeffries,* 5 F.3d

---

23. Odle's counsel moved for a change of venue three times in the trial court. IV CT 1065, 1151; 11 RT 64. He also pursued a writ of mandate on this issue to the California Supreme Court, which denied the writ. *Odle v. Superior Court,* 32 Cal.3d 932, 187 Cal.Rptr. 455, 654 P.2d 225 (1982).

24. An additional factor weighing against a finding of presumed prejudice is that the articles date from February to July 1981, two years before jury selection began on June 6, 1983. *See* IV CT 1161–95.

at 1189. Odle has shown neither a factual nor a legal basis on which the court could find that this presumption is overcome.

The trial court carefully considered Odle's motion and questioned jurors individually about their exposure to media accounts of the case. Odle does not point to any specific examples of venire-member prejudice. For these reasons, the state is entitled to judgment as a matter of law.

### Claim DD

Odle argues that judicial misconduct in his case and in the case of his accomplice, Bryan Odle, denied him his right to a fair trial. The state denies that the judges' comments constituted misconduct, and any misconduct that occurred, according to the state, was cured by the trial court's instructions.

■ Odle points to two judicial comments to establish his claim of misconduct.[25] First, at the close of his case, his trial judge Arnason said:

> So it would appear, ladies and gentlemen, what we will be doing is after counsel—after we have the rebuttal witness on Monday, hopefully counsel will be in a position then to start arguing the case. After they finish their arguments you will be instructed, then the matter will be in your hands. We are getting down to the final lap *as far as this phase of the trial is concerned.*

21 RT 162 (emphasis added). Odle claims that this comment suggested to the jury that Odle's guilt had already been decided and a penalty trial was inevitable. He argues that the comment undermined the presumption of innocence and the jury's sense of responsibility for the verdict.

The precise standard for reviewing claims of judicial bias or misconduct in a federal habeas proceeding in this circuit is unclear.

*See Jeffers v. Ricketts,* 627 F.Supp. 1334, 1354 (D.Ariz.1986), *rev'd on other grounds* 832 F.2d 476 (9th Cir.1987), *rev'd* 497 U.S. 764, 110 S.Ct. 3092, 111 L.Ed.2d 606 (1990). *See also Walberg v. Israel,* 766 F.2d 1071, 1077–78 (7th Cir.1985) (standard is whether judge's bias is likely to affect jury, but bias may violate due process even when the jury is unaware). The district court in *Jeffers* posited that a petitioner claiming judicial bias must show that the judge's conduct 1) deprived him of a fair hearing; 2) is personal to the petitioner; and 3) arises from matters outside the litigation. *Jeffers,* 627 F.Supp. at 1354.

By this standard, Odle's claim of judicial misconduct fails. After the judge's comment, the jury deliberated for approximately three days before reaching a verdict. 23 RT 147, 24 RT 10. The length of its deliberations suggests that the jury did not take Odle's guilt to be a foregone conclusion. Also, the judge's comment was not directed specifically at Odle, his conduct or his crime. Finally, the judge's statement arose from the trial itself. The court concludes that the judge's comments did not deny Odle a fair trial.[26]

■ The second judicial comment Odle cites to support his claim was a remark by Bryan Odle's trial judge, Judge Fanin. During pre-trial proceedings in Bryan's case, Judge Fanin said,

> I had the problem with Mr. [James] Odle. I think if he's guilty he's an animal, and he's a bad person, if he's guilty. And if he's guilty, he's also the man that had me vacate my house for a couple hours as a result of the shoot-out that was going on about four blocks away from where I live.

Ex. 11 (excerpt from transcript in *People v. Bryan Odle,* Contra Costa Superior Court No. 24580). The judge made this comment

---

**25.** Odle also claims that an ex parte communication between prosecution witness Officer Donohue and the trial judge constituted judicial misconduct. Odle says the judge and the witness discussed Donohue's relationship to a juror in Odle's case. Had the communication been revealed, Odle says, it would have shown cause for the juror to be discharged.

Odle does not offer factual or legal support for his claim that some communication between Do-

nohue and the judge rendered his conviction or sentence unconstitutional.

**26.** Additional facts minimize the effect of the judge's remark on the fairness of Odle's trial. The jurors had been told during voir dire that the guilt phase might be the only phase of the trial. *See, e.g.,* 9 RT 12. The jury was also instructed to disregard any comments by the judge and to form its own opinion. 23 RT 128.

in a different, albeit related, proceeding more than two years before Odle's trial began. Odle has not shown that his jury knew about this comment or that it affected his trial. The court concludes that the judge's comment does not constitute unconstitutional misconduct.

Based on these undisputed facts and the standard set forth in *Jeffers,* the court concludes that Odle's federal constitutional rights were not violated. The court GRANTS summary judgment in favor of respondent.

### Claim EF

■ Odle makes two arguments that the jury was prejudiced against him because of security measures used for his municipal court appearances and during his trial in superior court. Odle claims that unnecessary shackling and restraints placed on him during municipal court appearances and while being moved to and from the courtroom prejudiced the jury against him. He also claims that the jury was prejudiced against him because two deputy officers guarded him in the courtroom during trial.

Respondent argues that Odle has not shown that the shackling was prejudicial or unjustified. It also responds that Odle has not demonstrated prejudice from the presence of the deputies.

Odle's claim about the out-of-court shackles fails because he does not make specific allegations of prejudice as to particular jurors. Also, the record does not indicate that the petit jury was prejudiced against Odle because of the shackles and restraints.

During voir dire, trial counsel asked venire members individually whether they had seen Odle in chains. He asked whether seeing Odle in restraints influenced their views about Odle's dangerousness or culpability. One prospective juror stated that she saw Odle in shackles and assumed that he was dangerous. 3B RT 73–74. Another heard the chains and was disturbed that he was chained. 3B RT 128. A third prospective

juror said that he saw the shackles but had no reaction. 3B RT 149. A fourth prospective juror heard the chains but formed no opinion about Odle or the shackling. 4A RT 19. None of these prospective jurors sat on the jury.[27] In light of these facts, the court concludes that Odle was not prejudiced when the four venire members saw him in chains outside the courtroom.

■ Odle's second contention, that he was prejudiced by the security officers, is likewise without merit. The use of noticeable security personnel is not inherently prejudicial to a criminal defendant. *See Holbrook v. Flynn,* 475 U.S. 560, 568–69, 106 S.Ct. 1340, 1345–46 (1986). The jury may draw a variety of inferences from the presence of uniformed officers in the courtroom; the officers' presence does not necessarily brand the defendant with an "unmistakable mark of guilt." *Id.* at 571, 106 S.Ct. at 1347.

The federal constitutional test is whether the security measures used were "so inherently prejudicial as to pose an unacceptable threat to the defendant's right to a fair trial." *Id.* at 572, 106 S.Ct. at 1347; *Rhoden v. Rowland,* 10 F.3d 1457, 1460 (9th Cir.1993). On the facts presented here, Odle has not shown that his right to a fair trial was compromised by the presence of the two guards. *See Holbrook,* 475 U.S. at 564, 106 S.Ct. at 1343 (12 uniformed officers for six defendants not prejudicial); *King v. Rowland,* 977 F.2d 1354, 1358 (9th Cir.1992) (three deputy sheriffs not unduly prejudicial).

Under applicable Ninth Circuit law and based on the undisputed facts, the state is entitled to judgment as a matter of law on both parts of Claim EE.

### Claim FF

■ Odle argues that jail officials interfered with his legal mail before trial and with his exercise privileges. Odle contends that his ability to communicate with counsel was affected. Odle also contends that his defense was hindered because counsel had to spend

---

27. Odle also argues that he was denied a fair trial when one prosecution witness saw him in shackles and chains. The witness told the court, outside the presence of the jury, that she saw Odle in the hallway wearing restraints. 16 RT

114. Odle has not alleged how he was prejudiced by the witness' sight of him in restraints. Based on the facts, the court concludes that Odle was not prejudiced.

time challenging Odle's conditions of confinement. The state does not dispute Odle's allegations about jail conditions but denies that those conditions violated Odle's federal constitutional rights.

Odle has not presented authority that shows that restrictions on his exercise privilege violated his constitutional rights. It is also not clear from the pleadings how interference with his mail rendered Odle's conviction or sentence unconstitutional. Although his account is somewhat confusing, it appears that Odle told the court approximately a week before jury selection started that jail authorities had been opening his legal mail outside his presence for about a year and a half. 1 RT 74–75. He does not allege that this interference with his mail denied him access to counsel or to the courts.

Because the record and pleadings do not show that Odle's conditions of confinement rendered his conviction or sentence unconstitutional, the court GRANTS respondent's motion for summary judgment on this claim.

### Claim GG

Odle claims that his jury was summoned and selected in a racially discriminatory manner. Odle argues that the trial court erred when it denied his motion for a new venire that was based on the record in another Contra Costa County case. 1 RT 57–58. The state responds that Odle has not set forth the facts or the particular basis on which he seeks relief.

■ To state a prima facie case of discriminatory selection of a jury venire, Odle must show that: 1) he is a member of a racial group capable of being singled out for differential treatment and 2) in his jurisdiction, members of his race have not been summoned for jury service over an extended period of time or were substantially underrepresented on the venire or that the venire selection process provided an opportunity for discrimination. *Batson v. Kentucky*, 476 U.S. 79, 94–95, 106 S.Ct. 1712, 1721–1722, 90 L.Ed.2d 69 (1986).

■ Odle is caucasian. 1 RT 58. Odle's jury panel was entirely caucasian. Thus the record does not support a claim of discrimination against Odle's racial group. Nor does

the record before the court show that the venire was discriminatorily selected. Odle has not made out a prima facie case of discrimination in summoning of the venire under *Batson*.

■ For a prima facie showing of discrimination in selecting the petit jury, Odle must show that: 1) he is a member of a cognizable racial group and 2) any relevant circumstances raise an inference that the prosecutor used peremptory challenges to exclude venire members from the petit jury on account of their race. *Id.* at 96, 106 S.Ct. at 1722–1723. Odle has not established a basis for relief. He does not make specific allegations about the prosecutor's use of peremptory challenges. He does not indicate facts to show that venire members were excluded because of their race.

Because Odle has not made out a prima facie case of racial discrimination in the selection of either the venire or the petit jury, the state is entitled to judgment as a matter of law. Summary judgment in favor of the state is therefore GRANTED.

### Claim II

■ Odle claims that his right to confrontation, cross-examination and counsel were violated by the admission at trial of hearsay statements that the victim, Aguilar, disliked him. He argues that the evidence was irrelevant, erroneously admitted and prejudicial. The state responds that the evidence was relevant and properly admitted under state law. It denies that admission of the evidence violated any of Odle's federal constitutional rights.

Odle's claim fails because the record indicates that the victim's hearsay statement did not render Odle's trial fundamentally unfair. *See Estelle v. McGuire*, 502 U.S. 62, 75, 112 S.Ct. 475, 483–484, 116 L.Ed.2d 385 (1991). There was contradictory testimony about whether Aguilar disliked Odle. *Compare* 13 RT 33 (Kathy Roby testimony that Aguilar got along with Odle and had never expressed any fear of him) *with* 14 RT 5 (Paula Hargadon testimony that Aguilar did not like Odle and would leave the room when he entered). Furthermore, the prosecutor did not mention

Aguilar's feelings towards Odle during his argument.

Because the challenged hearsay statement was contradicted by other testimony and not emphasized by the prosecutor, the court concludes that its admission did not render Odle's trial fundamentally unfair. Summary judgment is therefore GRANTED in favor of respondent.

### Claim JJ

Odle claims that the trial court erred by admitting photographs of Aguilar's autopsy. He argues that admission of the photographs denied him a fair trial. The state responds that admission of autopsy evidence does not constitute a due process violation.

■ A petitioner may obtain habeas relief based on the trial court's admission of allegedly prejudicial autopsy evidence if the use at trial of the evidence denied him due process. *See Kealohapauole v. Shimoda,* 800 F.2d 1463, 1465 (9th Cir.1986); *Redding v. Minnesota,* 881 F.2d 575, 579 (8th Cir.1989).

■ The court concludes that admission of the photographs did not violate due process. The photographs were relevant to the only issue the prosecutor had to prove: Odle's state of mind at the time of the murder. *See Kealohapauole* 800 F.2d at 1466 (admission of videotape of victim's autopsy was relevant to cause of death and did not deny defendant due process). According to the trial court's comments and the parties' arguments at a pre-trial hearing, the photographs were small and relatively noninflammatory, although they were in color. 12 RT 10, 11, 14. Furthermore, potential jurors were told that gruesome photographs might be introduced as evidence and asked whether such photographs would affect their ability to be fair. *See, e.g.,* 9 RT 229–30 (juror Story), 10 RT 48 (juror McNutt).

Based on Ninth Circuit precedent and the record in this case, the court concludes that the autopsy photographs did not deny Odle a

fair trial. The court GRANTS summary judgment in favor of respondent on Claim JJ.

### Claim LL

#### 1. Arguments

Odle claims that his due process rights were violated when the prosecutor introduced at the penalty phase evidence of an alleged burglary/robbery/assault (the Kaiser charges). Specifically, Odle argues that the prosecutor committed prejudicial misconduct by dismissing the Kaiser charges and then introducing the evidence at the penalty phase of his capital trial.[28] He claims that the prosecutor sought dismissal to avoid the risk of an acquittal on the charges that would have precluded the jury from considering the evidence at the penalty phase.[29]

The state responds that because the evidence was admissible under state law, Odle has no basis for federal habeas relief. The state also denies that the prosecutor had improper reasons for dismissing the charges. It maintains that the prosecutor dismissed the charges to avoid further publicity that might have given Odle grounds to obtain a change of venue.

#### 2. Facts

The facts underlying Odle's claim are not in dispute. The parties contest only the prosecutor's motive for dismissing the Kaiser charges and then introducing them at the penalty phase.

The original information for the two murder charges was filed on August 12, 1980. III CT 860. An information was filed the next month charging Odle with the Kaiser robbery, burglary, assault, false imprisonment and car theft allegedly committed on March 15, 1980. *See* Ex. 10.

In March 1981, two years before Odle's murder trial, prosecutor Gary Yancey included the Kaiser charges in a notice of evidence that he intended to introduce at the penalty phase. The notice indicated that the evidence was relevant as "prior criminal activity

---

**28.** Odle does not claim that the admission of unadjudicated offenses in the penalty phase of a capital trial is in itself unconstitutional.

**29.** *See* California Penal Code § 190.3 ["[I]n no event shall evidence of prior criminal activity be admitted for which the defendant was prosecuted and acquitted."]

of James Odle which involved the use or attempted use of force or violence...." *See* California Penal Code § 190.3(b). The notice referred to the Kaiser charges as "pending against the defendant." IV CT 1084.

A month after filing the notice, Yancey moved to continue the trial on the Kaiser charges until after Odle's murder trial. 25 RT 21.[30] Because Odle waived time on the murder charges but not on the Kaiser charges, the judge could not trail the Kaiser trial. 25 RT 13–14. The judge found no good cause for a continuance and denied Yancey's motion. 25 RT 22. Yancey then moved to have the charges dismissed without prejudice, and the trial court granted the motion.[31] 25 RT 22–23.

At a hearing during the guilt phase of Odle's murder trial, the parties argued about the admissibility of the Kaiser evidence in the penalty phase.[32] Yancey testified that he had moved to dismiss the Kaiser charges, rather than try them before the murder charges, to avoid additional publicity that might affect the murder trial. He denied that the charges were dismissed for lack of evidence.[33] 25 RT 14, 26.

Trial counsel Gagen responded that, by dismissing the Kaiser charges, Yancey had denied Odle his right to have them decided by a unanimous jury that had not convicted him of the murders. 25 RT 15, 19. Gagen agreed that Yancey had said at the earlier proceeding that he would dismiss the Kaiser charges if they could not trail because of the pending change-of-venue motion. 25 RT 21. Gagen contended, however, that Yancey opposed Odle's motion for a change of venue and had no genuine interest in minimizing publicity about the case. 25 RT 24–25. He argued that Yancey's decision was part of his

strategy to heap as much prejudice upon Odle as possible. 25 RT 22, 25.

The trial court ruled that evidence of the Kaiser charges would be admissible in the penalty phase to support the aggravating factor of violent criminal activity. *See* California Penal Code § 190.3(b). In rendering its decision, the court cited three cases. It did not make any factual findings about the prosecutor's conduct in dismissing the charges. 26 RT 1–2.

### 3. Analysis

The government has broad discretion to initiate, conduct or delay criminal prosecutions. *See, e.g., Wayte v. United States,* 470 U.S. 598, 607, 105 S.Ct. 1524, 1530, 84 L.Ed.2d 547 (1985); *Bordenkircher v. Hayes,* 434 U.S. 357, 364, 98 S.Ct. 663, 668–669, 54 L.Ed.2d 604 (1978); *United States v. Moran,* 759 F.2d 777, 783 (9th Cir.1985). Federal courts may review a prosecutor's exercise of discretion, however, and grant relief if the decision was based on an unconstitutional motive. *See, e.g., Wade v. United States,* 504 U.S. 181, 184–86, 112 S.Ct. 1840, 1843–44, 118 L.Ed.2d 524 (1992); *United States v. Goodwin,* 457 U.S. 368, 372, 102 S.Ct. 2485, 2488, 73 L.Ed.2d 74 (1982); *Bordenkircher,* 434 U.S. at 363, 98 S.Ct. at 668; *Adamson v. Ricketts,* 865 F.2d 1011, 1019 (9th Cir.1988) (en banc). *But see United States v. Redondo–Lemos,* 955 F.2d 1296, 1298–99 (9th Cir.1992) (separation of powers prevents federal court from granting relief for arbitrary and capricious charging decision). A prosecutor violates due process by making charging decisions in an arbitrary or capricious manner or with a vindictive motive. *See, e.g., Goodwin,* 457 U.S. at 372, 102

---

**30.** The court has drawn these facts about pretrial proceedings concerning the Kaiser charges from the transcript of a hearing held during the trial about admission of the evidence. *See* 25 RT 13–25. At the hearing, trial counsel Gagen quoted from transcripts of various pre-trial proceedings regarding the Kaiser charges. These transcripts are apparently not before this court.

**31.** Odle's counsel did not concur with the dismissal. 25 RT 23.

**32.** Odle had moved, two years earlier, to have the evidence excluded from the penalty phase

because prejudice arising from its admission would outweigh its probative value. *See* California Evidence Code § 352. He argued that he would be prejudiced by having to defend against the charges before a jury that had heard the evidence of the murders. IV CT 1058. Yancey opposed the motion. IV CT 1119.

**33.** Gagen had the opportunity to question Yancey about his testimony but declined to do so. 25 RT 14.

S.Ct. at 2488; *Redondo–Lemos,* 955 F.2d at 1298–99.

A petitioner may establish actual prosecutorial vindictiveness by presenting objective evidence of the prosecutor's improper motives.[34] *See Goodwin,* 457 U.S. at 380 n. 12, 102 S.Ct. at 2492 n. 12. Odle has not presented such evidence. Yancey's conduct, as reflected in the record, does not establish that he dismissed the Kaiser charges solely to penalize Odle or influence his conduct. *See Goodwin,* 457 U.S. at 384, 102 S.Ct. at 2494.

Odle need not show actual vindictiveness to prevail on his claim, however. A presumption of vindictiveness arises when the circumstances surrounding a prosecutor's decision show a "reasonable likelihood" of vindictive or unconstitutional motivation. *See Goodwin,* 457 U.S. at 373, 102 S.Ct. at 2488–89. To obtain relief or an evidentiary hearing based on the presumption, a petitioner must present something more than generalized allegations about the prosecutor's improper motive. *See Wade,* 504 U.S. at 186, 112 S.Ct. at 1844; *Redondo–Lemos,* 955 F.2d at 1302–03; *United States v. Gallegos–Curiel,* 681 F.2d 1164, 1169 (9th Cir.1982). A prosecutor may rebut the presumption, once raised, by "presenting evidence of independent reasons or intervening circumstances which demonstrate that [the] decision was motivated by a legitimate purpose." *Adamson,* 865 F.2d at 1019.

Odle argues that the prosecutor's decision to dismiss the charges when Odle refused to let them trail the murder case is prosecutorial misconduct. He offers three facts to support his allegation: 1) the timing of the prosecutor's motion to dismiss; 2) the prosecutor's failure to try the Kaiser charges before the murder charges; and 3) the fact that the prosecutor would not have been able to introduce evidence of the charges at the penalty phase had Odle been tried and acquitted on the charges.[35] The court is not persuaded that these facts are sufficient to invoke the presumption of vindictiveness. *See Goodwin,* 457 U.S. at 382 n. 15, 102 S.Ct. at 2493 n. 15 (only evidence supporting allegation of vindictiveness was that the prosecutor brought additional charges after the defendant refused to plead guilty); *Gallegos–Curiel,* 681 F.2d at 1171 (sequence of events is insufficient to invoke presumption; there must be likelihood of retaliation).

Even if Odle has alleged sufficient facts to raise the presumption, however, the court concludes that the record rebuts the presumption of vindictiveness. Yancey gave notice that he would introduce evidence of the Kaiser charges at the penalty phase a month before he moved to have the charges dismissed. 25 RT 21; IV CT 1084. When he filed the notice, the charges were still pending. IV CT 1084. The timing of the notice and the motion for dismissal suggests that Yancey did not plan to have the charges dismissed just to ensure that he could present the evidence at the penalty phase of Odle's murder trial. *Cf. Adamson,* 865 F.2d at 1018 (prosecutor's allegedly vindictive de-

---

34. Odle does not specifically cast his claim in terms of vindictive prosecution. The court has decided to apply the analytical framework set forth in vindictive prosecution cases to Odle's claim for several reasons.

First, Odle's argument resembles a claim of vindictive prosecution in several important ways. The essence of a vindictive prosecution claim is that a prosecutor improperly exercised his or her discretion in response to a defendant's assertion of a statutory, procedural or constitutional right. *See, e.g., Gallegos–Curiel,* 681 F.2d at 1168. Odle had an undisputed right to waive time on the murder charges and demand a timely trial on the Kaiser charges. *See* Cal.Penal Code § 1382. Yancey had discretion to charge, prosecute and dismiss the Kaiser offenses. Odle does not claim that Yancey dismissed the charges to penalize or

punish him for exercising his right either to waive time or to demand a speedy trial. Odle does contend, however, that Yancey exercised his discretion with the improper motive of prejudicing his capital sentencing proceeding.

Second, the legal authority for Odle's claim is not apparent from the briefing. Finally, vindictive prosecution cases offer a useful framework for the court to analyze this claim. For these reasons, the court construes Odle's claim in this light.

35. The court notes that had Yancey exercised his discretion not to charge the Kaiser offenses at all, he still could have introduced evidence of the robbery, burglary and assault at the penalty phase of Odle's capital trial to support the same aggravating circumstance. *See* California Penal Code § 190.3(b).

cision "directly followed" Adamson's assertion of his Fifth Amendment privilege).

More importantly, Yancey and respondent have consistently offered a legitimate reason for Yancey's decision to seek dismissal of the Kaiser charges. Yancey moved for dismissal only after Odle waived time for the murder trial but declined to do so for the Kaiser trial. 25 RT 13–14. Yancey argued on the record that he dismissed the charges, when the trial court would not let them trail the murder case, because he did not want to generate additional prejudicial publicity before Odle's capital trial. 25 RT 14, 21.

The record supports Yancey's (and respondent's) proffered justification for seeking dismissal. *See Goodwin,* 457 U.S. at 374, 102 S.Ct. at 2489 ("presumption of vindictiveness ... may be overcome only by objective information in the record"). Yancey consistently opposed Odle's motions for a change of venue. *See* IV CT 1091, 1207, 1225. The question whether a change of venue was required or would be ordered was a close one. *See, e.g., Odle v. Superior Court of Contra Costa County,* 32 Cal.3d 932, 947–59, 187 Cal.Rptr. 455, 654 P.2d 225 (1982) (two judges dissented from California Supreme Court's denial of Odle's writ to mandate change of venue). The circumstances in this case support Yancey's and the state's assertion of a legitimate reason for the discretionary prosecutorial decision to dismiss the Kaiser charges. *Cf. Adamson,* 865 F.2d at 1019–20 (state's attempts to compel Adamson to testify and Adamson's history of cooperation with authorities contradicted state's claim that it had legitimate reason for increasing charges against Adamson).

Based on these undisputed facts and the applicable law, the court concludes that the record does not support Odle's claim of prosecutorial misconduct. Summary judgment in favor of respondent is GRANTED.

### Claim MM

Odle claims that he was denied a fair and reliable penalty verdict because the jurors were not required to agree unanimously on the existence of each aggravating factor. The state responds that the Constitution does not require sentences to be imposed by a jury; thus, it does not require a jury imposing a sentence to agree unanimously. It denies that non-unanimous sentencing violates any federal constitutional right.

■ The state's contention that the Constitution does not require capital sentencing decisions to be made by juries is correct. *See Clemons v. Mississippi,* 494 U.S. 738, 745, 110 S.Ct. 1441, 1446, 108 L.Ed.2d 725 (1990). The Ninth Circuit has not decided whether jurors must decide unanimously on aggravating factors under the California death penalty statute. *But see Jeffries v. Blodgett,* 5 F.3d 1180, 1195 (9th Cir.1993) (Washington statute does not require jurors to decide unanimously on death sentence for each murder in a multiple-murder trial).

Odle has not offered persuasive reasons why the court should rule in his favor. Accordingly, respondent has met its burden on summary judgment of showing that Odle is not entitled to relief.

### Claim NN

■ Odle contends that the trial court improperly denied his request to delete inapplicable mitigating factors from the list of statutory sentencing factors that was read to the jury. *See* 29 RT 3–6, 89–90; Cal.Penal Code § 190.3. Specifically, he argues that factors (e), (f), (g), (i) and (j) [36] should have been deleted. Because they were not, according to Odle, the jury was allowed to consider the absence of mitigating factors in aggravation, rendering his sentence unconstitutionally unfair and unreliable.

The Supreme Court recently rejected a similar challenge to California's statutory

---

**36.** These factors are:

 ... (e) Whether or not the victim was a participant in the defendant's homicidal conduct or consented to the homicidal act. (f) Whether or not the offense was committed under circumstances which the defendant reasonably believed to be a moral justification or extenuation for his conduct. (g) Whether or not the defen-

dant acted under extreme duress or under the substantial domination of another person.... (i) The age of the defendant at the time of the crime. (j) Whether or not the defendant was an accomplice to the offense and his participation in the commission of the offense was relatively minor.

*See* Cal.Penal Code § 190.3

sentencing factors. *See Tuilaepa v. California,* —— U.S. ——, —— – ——, 114 S.Ct. 2630, 2637–38, 129 L.Ed.2d 750 (1994). The Court explained that, under the state's death-penalty scheme, the jury narrows the class of death-eligible defendants at the guilt phase, when it convicts a defendant of first-degree murder and one or more statutory special circumstances. *Id.* at —— – ——, 114 S.Ct. at 2636–37. Once this constitutionally required narrowing has been done, the jury "need not be instructed how to weigh any particular fact in the capital sentencing decision." *Id.* at ——, 114 S.Ct. at 2638. The jury may appropriately be pointed toward a variety of factors to consider in its sentencing decision, or it may be given " 'unbridled discretion.' " *Id.* at ——, 114 S.Ct. at 2639 (quoting *Zant v. Stephens,* 462 U.S. 862, 875, 103 S.Ct. 2733, 2741–42, 77 L.Ed.2d 235 (1983)).

The trial court did not commit constitutional error by instructing the jury on all of California's statutory sentencing factors. Relying on *Tuilaepa,* the court GRANTS summary judgment on Claim NN.

### Claim OO

Odle argues that his sentence is unconstitutional because the trial court did not specify which statutory sentencing factors were aggravating and which were mitigating. The jury thus used mitigating factors in aggravation, applying the statute in a vague, overbroad and arbitrary manner, according to Odle. He also challenges five of the statutory aggravating factors as unconstitutionally vague.

■ Under California's death-penalty scheme, the jury instructions need not define which enumerated sentencing factors are aggravating and which are mitigating. *See Harris v. Pulley,* 692 F.2d 1189, 1194 (9th Cir.1982) *rev'd on other grounds* 465 U.S. 37, 104 S.Ct. 871, 79 L.Ed.2d 29 (1984) (uphold-

ing constitutionality of California death-penalty statute); *see also Tuilaepa,* —— U.S. at —— – ——, 114 S.Ct. at 2638–39.

■ Furthermore, the Court recently held that a statutory sentencing factor is not unconstitutionally vague if it has a " 'common-sense core of meaning ... that criminal juries should be capable of understanding.' " *See Tuilaepa,* —— U.S. at ——, 114 S.Ct. at 2636 (quoting *Jurek v. Texas,* 428 U.S. 262, 279, 96 S.Ct. 2950, 2959–60, 49 L.Ed.2d 929 (1976) (White, J., concurring in judgment)). Applying this standard, the Court upheld three of the specific aggravating factors challenged by Odle as unconstitutionally vague. *Id.* at —— – ——, 114 S.Ct. at 2637–38. Odle argues that two other two factors—the presence or absence of extreme mental disturbance and the presence or absence of extreme duress—are vague because the word "extreme" does not offer the jury guidance as to the degree of disturbance or duress. In light of the *Tuilaepa* standard and the wide discretion that may properly be granted to a capital sentencing jury (*see id.* at ——, 114 S.Ct. at 2635), the court concludes that these factors are not impermissibly vague.

For these reasons and the reasons stated in the discussion of Claim NN, above, summary judgment is GRANTED as to Claim OO.

### Claim OO

■ Odle claims that he was prejudiced by the jury's exposure to impermissible victim impact evidence about murder victim Aguilar.[37] He refers specifically to two statements made during the guilt phase of the trial: 1) the prosecutor's question to a witness about Aguilar leaving the house to get milk for her eighteen-month-old son on the night of the murder (13 RT 23, 25) and 2) testimony by a friend that Aguilar hoped to

---

37. Odle also claims that testimony from the robbery/assault victim that was introduced at the penalty phase violated his right to a fair sentencing proceeding. Specifically, Odle says that the testimony that the victim's injury caused him to miss two weeks of work was prejudicial victim impact evidence. 26 RT 44.

Admission of victim impact evidence in the penalty phase of a capital trial does not violate the federal Constitution unless it renders the proceeding fundamentally unfair. *See Payne v. Tennessee,* 501 U.S. 808, 111 S.Ct. 2597, 115 L.Ed.2d 720 (1991). The victim's testimony here

become a model.[38] 14 RT 5–7.

The state responds that a prosecutor may constitutionally present victim impact evidence in a capital case, citing *Payne v. Tennessee,* 501 U.S. 808, 111 S.Ct. 2597, 115 L.Ed.2d 720 (1991). Odle argues in response that *Payne* was incorrectly decided and that the evidence presented was so unduly prejudicial as to deny him due process.

The state's wholesale reliance on *Payne* is misplaced. *Payne* held that victim impact evidence introduced at a capital *sentencing* hearing does not necessarily violate the Eighth Amendment. *Payne,* 501 U.S. at 827, 111 S.Ct. at 2609. *But see Black v. Collins,* 962 F.2d 394, 408 (5th Cir.1992) (applying *Payne* to evidence introduced during guilt phase). The comments Odle challenges as impermissible victim impact evidence were introduced during the *guilt* phase. Furthermore, *Payne* does not preclude a habeas claim that a sentencer's consideration of victim impact evidence violated due process.

A petitioner is entitled to federal habeas relief if evidence introduced at either the guilt or the penalty phase rendered his trial fundamentally unfair. *See Estelle v. McGuire,* 502 U.S. 62, 75, 112 S.Ct. 475, 483, 116 L.Ed.2d 385 (1991); *Payne,* 501 U.S. at 825, 111 S.Ct. at 2608. The victim impact testimony Odle challenges was introduced early in the guilt phase of his trial. The comments were brief. The prosecutor did not refer to either statement during his closing argument.

Based on the applicable law and these undisputed facts, the court concludes that the statements did not deny Odle a fair trial. Summary judgment in favor of respondent is GRANTED.

### Claim RR

■ Odle claims that the jury was improperly instructed at the penalty phase about the standard for reasonable doubt with respect to his prior violent crimes. Specifically, he argues that the reasonable doubt

instruction was unconstitutional because it referred to "moral evidence" and "moral certainty." *See* 29 RT 88–89. The Supreme Court recently upheld a reasonable doubt instruction identical to the one challenged here. *See Victor v. Nebraska,* —— U.S. ——, 114 S.Ct. 1239, 127 L.Ed.2d 583 (1994). The Court criticized the cited phrases but held that other instructions adequately informed the jury that it must decide based on the evidence presented. Odle's jury was similarly instructed, at both the guilt and penalty phases, to render a verdict based on the evidence. *See* 23 RT 94–95; 29 RT 89.

Based on *Victor* and the record in this case, the court GRANTS summary judgment in favor of respondent on Claim RR.

### Claim SS

■ Odle claims that his federal constitutional rights were violated because the trial court did not instruct the jury that it must find beyond a reasonable doubt that death was the appropriate punishment. The Ninth Circuit has rejected a similar challenge to California's capital sentencing scheme. *Harris v. Pulley,* 692 F.2d 1189, 1195 (9th Cir. 1982), *rev'd on other grounds* 465 U.S. 37, 104 S.Ct. 871, 79 L.Ed.2d 29 (1984). *But cf. Clark v. Ricketts,* 958 F.2d 851, 860 n. 6 (9th Cir.1991) (court declined to decide whether Constitution required aggravating circumstances to be established beyond a reasonable doubt under Arizona death penalty statute). Based on the reasoning in *Harris,* the court GRANTS summary judgment in favor of respondent.

### Claim TT

■ Odle argues that the California death penalty statute is unconstitutional for several reasons. First, the statute does not provide for proportionality review, even though non-capital defendants receive such review. As respondent points out, however, proportionality review is not constitutionally mandated under California's death-penalty

does not rise to the level of a due process violation.

**38.** Odle's trial counsel did not object to the prosecutor's question about Aguilar going to get milk for the baby. His objection to the testimony

about Aguilar's aspirations was overruled because the testimony provided a foundation for evidence about business cards found in Aguilar's purse. 14 RT 6.

scheme. *See Pulley v. Harris,* 465 U.S. 37, 104 S.Ct. 871, 79 L.Ed.2d 29 (1984).

■ Second, Odle contends, without explanation, that the statutory special circumstances do not properly narrow the class of defendants eligible for death. The Supreme Court recently explained that special circumstances must meet two requirements: They must not be applicable to every defendant convicted of murder, and they must not be unconstitutionally vague. *See Tuilaepa,* — U.S. at ——, 114 S.Ct. at 2635. California's special circumstances meet these requirements. Although the statute at the time of Odle's trial listed nineteen special circumstances, they do not encompass every first-degree murder. *See* Cal.Penal Code § 190.2. Nor are they so outside the understanding of a criminal jury as to be unconstitutionally vague. *See Tuilaepa,* — U.S. at ——, 114 S.Ct. at 2636.

■ Third, Odle argues that the statutory sentencing factors do not rationally narrow the pool of death-eligible defendants or provide sufficient guidance for the jury to make a rational sentencing decision. The Court has held, however, that the role of California's statutory sentencing factors is not to narrow the class of death-eligible defendants to those who should actually be sentenced to death. *See id.* at ——————, 114 S.Ct. at 2636–37. Instead, they provide factors for the jury to consider in sentencing the defendant based on his individual character and crime. *See id.* at ——, 114 S.Ct. at 2637. For the reasons discussed above (*see* Claims NN and OO), the sentencing factors are not constitutionally infirm.

Odle also argues that California prosecutors arbitrarily and capriciously select cases to prosecute as capital offenses. He does not offer facts to support his claim. The state is entitled to judgment as a matter of law.

For these reasons, summary judgment in favor of respondent is GRANTED as to Claim TT.

### Claim UU

■ Odle claims that he was arbitrarily denied his right to have his death sentence independently reviewed by the trial court, as required by California law. This arbitrary denial, he argues, violated due process. The state responds that California's statutory, mandatory review by the trial court of death sentences is not required by the Constitution. It also maintains that if this court were to review Odle's challenge to the sentence-modification proceeding, it must consider only the evidence presented at trial and not Odle's new evidence.

Under California law, the trial court must review the evidence presented at trial and the aggravating and mitigating factors to determine whether the death sentence imposed by the jury is supported by the facts and the law. The court must state on the record the reasons for its findings. California Penal Code § 190.4(e).

The trial court in Odle's case complied with the requirements of § 190.4(e). It made findings on the record, albeit cursorily, that all the statutory factors applied to Odle's case as aggravating factors and that there were no mitigating factors. 3Q RT 23–26.

Based on the record, the court concludes that Odle was not arbitrarily denied his statutory right to have the trial court review his death sentence. The court GRANTS summary judgment in favor of respondent.

### Claim WW

■ Odle argues that the prosecutor's plea agreement with Bryan Odle, Odle's nephew and accomplice in the Aguilar murder, coerced Bryan to testify falsely, resulting in prejudice to Odle. The state responds that Odle has not shown that the prosecutor coerced Bryan's testimony. It also contends that the prosecutor had no duty to disclose information about his plea agreement with Bryan unless the information was material.

Both Bryan and his attorney testified about the plea agreement at Odle's trial. 15 RT 136–77; 16 RT 1–51. Odle's trial counsel questioned Bryan and his attorney about the agreement both in chambers and before the jury. 15 RT 117–34.

Specifically, Bryan testified in chambers and before the jury that he surrendered to the police on the advice of his attorney and that he was originally charged with murder. He was released on $15,000 bail after a week

in jail. Bryan's case trailed Odle's for three years; he never made a statement to the police, however, until just before Odle's trial began. He believed that he would be sentenced only to probation if he testified against Odle, but he understood that he could be sent to prison for up to nine years. 15 RT 178–82.

Bryan signed a plea agreement on June 20, 1983, two days before he testified. He pled guilty to accessory to murder, kidnaping and auto theft. 15 RT 182. According to Odle, Odle's trial judge sentenced Bryan to probation after Bryan testified.[39] Odle's trial counsel cross-examined Bryan extensively about his testimony about the Aguilar murder. 15 RT 177–201; 16 RT 1–43.

The record before this court does not support Odle's claim that Bryan was coerced to testify falsely against him. Odle has not identified any part of Bryan's testimony as being false.

Because Odle has not alleged specific facts to support this claim, the state is entitled to judgment as a matter of law.

### Claim XX

 Odle claims that his Eighth and Fourteenth Amendment rights to a fair and reliable sentencing hearing were violated because the jury was precluded from considering Bryan Odle's lesser sentence as a mitigating factor. The state responds that such evidence is inadmissible and irrelevant under state law.

The sentencer in a death penalty case may not be prevented from considering "as a mitigating factor, any aspect of a defendant's character or record and any of the circumstances of the offense that the defendant proffers as a basis for a sentence less than death." *Lockett v. Ohio*, 438 U.S. 586, 604, 98 S.Ct. 2954, 2965, 57 L.Ed.2d 973 (1978) (emphasis and footnotes omitted); *see also Hitchcock v. Dugger*, 481 U.S. 393, 394, 107 S.Ct. 1821, 1822, 95 L.Ed.2d 347 (1987).

There is no evidence that Odle's counsel sought to present evidence of Bryan's sentence at the penalty phase. The trial court cannot be faulted for preventing the jury from considering Bryan's sentence when such evidence was never proffered.[40] *Cf. Mak v. Blodgett*, 970 F.2d 614, 622 (9th Cir. 1992) (trial court committed constitutional error by excluding proffered circumstantial evidence that co-defendants planned the offense).

Moreover, the jury did hear, during guilt phase, testimony about Bryan's participation in the Aguilar offense, his plea agreement and his likely sentence. 15 RT 178–82, 184. The jury was instructed at penalty phase to consider all guilt-phase testimony and "[a]ny other circumstance which extenuates the gravity of the crime even though it is not a legal excuse for the crime." 29 RT 89, 90.

For these reasons, the state is entitled to judgment as a matter of law.

### Claim ZZ

Odle contends that his counsel on appeal was ineffective for failing to: 1) ensure that the record was prepared in a timely and complete fashion; 2) raise on appeal errors that were apparent from the record; 3) seek funds or conduct investigation for potential grounds for habeas corpus relief.[41] The state responds that appellate counsel properly selected only the strongest issues to appeal and was not ineffective for failing to raise every claim Odle now urges.

 Effective assistance of counsel, governed by the standard set forth in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), is guaranteed for a criminal defendant's first appeal as of right. *Evitts v. Lucey*, 469 U.S. 387, 105 S.Ct. 830, 83 L.Ed.2d 821 (1985); *Miller v. Keeney*, 882 F.2d 1428, 1433 (9th Cir.1989); *United States v. McAdams*, 759 F.2d 1407, 1409 (9th Cir. 1985). To prevail on this claim, Odle must show both that counsel performed below an objective standard of reasonableness and

---

**39.** Elsewhere in his brief, Odle says that Bryan served several months pursuant to the plea agreement. *See* Amended Petition for Writ of Habeas Corpus at 249. The record does not indicate the timing or nature of Bryan's sentence.

**40.** Such a claim must be presented in terms of ineffective assistance of counsel.

**41.** See Claim AAA, below, for discussion of ineffective assistance on state habeas.

that there is a reasonable probability that, but for counsel's errors, he would have prevailed on his appeal. *Strickland,* 466 U.S. at 688, 694, 104 S.Ct. at 2065, 2068.

■ The Constitution does not require an appellate attorney to raise every colorable or non-frivolous claim; to the contrary, effective appellate advocacy involves weeding out weaker claims in order to focus on stronger ones. *Jones v. Barnes,* 463 U.S. 745, 754, 103 S.Ct. 3308, 3314, 77 L.Ed.2d 987 (1983); *Miller,* 882 F.2d at 1434. Odle has not indicated specific claims that appellate counsel should have raised but did not; thus, he has not shown that appellate counsel's performance was defective. Odle has also failed to state how he was prejudiced by appellate counsel's alleged deficiencies.

■ Odle also argues that his appellate counsel was ineffective for failing to ensure that the record was before the California Supreme Court of an in-camera hearing on Odle's pre-trial motion for severance.[42] Counsel relied on the severance argument on appeal, and he apparently knew that the hearing had been recorded. *See* Declaration of [co-counsel] William Lowe, Ex. 34 at 7–8; *People v. Odle,* 45 Cal.3d 386, 401–403, 247 Cal.Rptr. 137, 754 P.2d 184 (1988).

Criminal defendants have the right to an appellate record consisting of a complete transcript of the trial proceedings. *See United States v. Wilson,* 16 F.3d 1027, 1031 (9th Cir.1994); *United States v. Carrillo,* 902 F.2d 1405, 1409 (9th Cir.1990). Appellate counsel's failure to provide the court with a copy of the hearing transcript seems unreasonable.

Odle's claim fails, however, because he has not shown that the outcome of his appeal would have been different had counsel provided the California Supreme Court with the hearing transcript.[43] That court considered and rejected appellate counsel's arguments that the joinder harmed Odle's diminished-capacity defense to the Aguilar murder and his lack-of-premeditation defense to the Swartz murder. *See Odle,* 45 Cal.3d at 403,

247 Cal.Rptr. 137, 754 P.2d 184. Counsel's arguments at the hearing would have added little, if anything, to the court's analysis of prejudice from the denial of severance. *See generally* Ex. 55.

Trial counsel argued at the hearing that because of the joinder he decided not to have Odle testify about the Swartz murder for fear of damaging cross-examination about the Aguilar murder. Ex. 55 at 11–12. This argument apparently had not been made to the California Supreme Court. *See Odle,* 45 Cal.3d at 403, 247 Cal.Rptr. 137, 754 P.2d 184; Appellant's Opening Brief at 90–98. But the hearing transcript would not have changed the Supreme Court's decision. At the hearing, counsel mentioned only that Odle would have testified that he had no intent to shoot Swartz. Trial counsel presented this defense at trial without Odle's testimony. The Supreme Court considered the effect of Odle's Swartz murder defense on his Aguilar murder defense and still found no error in the joinder. Ex. 55 at 11–12.

Odle has not shown that he received constitutionally ineffective assistance from his appellate counsel. The court GRANTS summary judgment in favor of the state.

### Claim AAA

■ Odle claims that he was denied his right to counsel because he did not have a state habeas attorney for more than a year while his appellate counsel sought to withdraw and before new counsel was appointed. Odle also argues that California's guarantee of counsel to pursue a state habeas petition creates a state-law entitlement, the arbitrary denial of which violates due process.

The state responds that because the Constitution does not guarantee counsel on collateral review, Odle has not stated a basis for federal habeas relief. It also denies that appellate counsel's performance was inadequate.

Appellate counsel did not want or plan to represent Odle in his state habeas proceedings. Ex. 25, 26. He did, however, work

---

**42.** The state did not respond to Odle's argument that counsel was ineffective for failing to provide the supreme court with the entire record.

**43.** Counsel filed the hearing transcript at this court's request.

with federal habeas counsel to obtain a stay in this court and file an initial state petition with two unexhausted issues. Ex. 37 at 2.

There is no Sixth Amendment right to appointed counsel in state post-conviction proceedings. Accordingly, Odle cannot state a Sixth Amendment claim for ineffective assistance of state habeas counsel. *See Coleman v. Thompson*, 501 U.S. 722, 752, 111 S.Ct. 2546, 2566, 115 L.Ed.2d 640 (1991); *Campbell v. Wood*, 18 F.3d 662, 676–78 (9th Cir.1994) (citing *Wainwright v. Torna*, 455 U.S. 586, 587–88, 102 S.Ct. 1300, 1301–02, 71 L.Ed.2d 475 (1982)).

Odle's claim also does not establish a due process violation based on the arbitrary deprivation of a state-law entitlement to habeas counsel.[44] The appointment of counsel for Odle's state habeas petition was delayed, not denied. The record does not indicate that Odle suffered prejudice from the delay.

For these reasons, the state is entitled to judgment as a matter of law.

### Claim BBB

 Odle claims that the jury unconstitutionally considered two multiple-murder special circumstance charges when it should have been permitted to consider only one. The state responds that this double-counting did not render Odle's sentence unconstitutional.

Odle was charged with multiple-murder special circumstances for both the Aguilar and the Swartz murders. V CT 1491, 1493. The jury returned a "true" verdict on both multiple-murder special circumstances. VI CT 1680, 1683. On direct appeal, the California Supreme Court held that state law permits only one multiple-murder allegation and vacated one of the special circumstances. *People v. Odle*, 45 Cal.3d 386, 410, 247 Cal. Rptr. 137, 754 P.2d 184 (1988). The court did not conduct a harmless-error analysis.

The Ninth Circuit has rejected the claim that a petitioner was prejudiced by duplicate multiple-murder special circumstances. *See Harris v. Pulley*, 692 F.2d 1189, 1203 (9th Cir.1982), *rev'd on other grounds* 465 U.S. 37, 104 S.Ct. 871, 79 L.Ed.2d 29 (1984). Harris was charged with a multiple-murder special circumstance, along with two other special circumstances, for each of two murders. The court held that it was clear to the jury from the trial that only two murders had been committed, despite the duplicate multiple-murder charges. The court concluded that "[i]t is highly unlikely that the jury simply counted up the special circumstances charged and based its verdict on such calculation." *Id. See also Bonin v. Vasquez*, 807 F.Supp. 589, 615 (C.D.Cal.1992) (error in charging ten multiple-murder special circumstances, instead of one, was harmless).

Following *Harris*, this court concludes that the duplicate multiple-murder special circumstances charged in Odle's case did not render his death sentence arbitrary and unfair.[45] Summary judgment in favor of respondent is GRANTED.

### VI

The court will issue a further order on each of the remaining claims, either resolving

---

44. The state will, as a matter of policy, appoint counsel to pursue state post-conviction remedies at the request of indigent capital defendants. *See In re Anderson*, 69 Cal.2d 613, 633, 73 Cal.Rptr. 21, 447 P.2d 117 (1968).

45. Odle argues that this court may not assume that the error in charging duplicate multiple-murder special circumstances was not prejudicial just because the *Harris* and *Bonin* courts found no prejudice. He says the court may not assume that, had the jury not weighed the extra special circumstance, it would still have sentenced him to death, citing *Stringer v. Black*, 503 U.S. 222, 112 S.Ct. 1130, 117 L.Ed.2d 367 (1992).

Odle's argument does not follow from his citation to *Stringer*. *Stringer* addressed the issue of a sentencer that had considered an invalid *penalty-phase* aggravating factor. Odle, on the other hand, challenges an invalid *guilt-phase* special circumstance. To the extent that the duplicate special circumstance played any part in the sentencing decision, the jury weighed it only as part of the "circumstances of the crime" aggravating factor. 29 RT 89 (jury was instructed to consider "[t]he circumstances of the crime of which the defendant was convicted in the present proceeding and the existence of any special circumstances found to be true.") On the facts of this case, the court concludes that the extra special circumstance did not prejudice Odle.

them on the present record or directing evidentiary hearing procedures.