James Richard ODLE, Petitioner,

v.

Arthur CALDERON, in his capacity as Warden of California State Prison at San Quentin, Respondent.

No. C–88–4280–CAL.

United States District Court, N.D. California.

Aug. 11, 1999.

Walter T. Johnson, Warren W. Wilson, Lillick & Charles, San Francisco, CA, for petitioner.

Dane R. Gillette, Office of California State, Attorney General, San Francisco, CA, for respondent.

## *OPINION AND ORDER ON PETITION FOR WRIT OF HABEAS CORPUS DEATH PENALTY CASE*

LEGGE, District Judge.

### I.

Petitioner James Richard Odle is a prisoner of the State of California, under sentence of death. He originally petitioned this court for a writ of habeas corpus in 1988. The matter is now before the court on his amended petition filed on February 16, 1993.

The procedural history of this case is summarized in this court's order granting partial summary judgment. *Odle v. Calderon*, 884 F.Supp. 1404, 1410–11 (N.D.Cal.1995). The amended petition raises fifty-six claims. In three prior orders, this court denied most of the claims. See *Odle v. Vasquez*, 754 F.Supp. 749 (N.D.Cal.1990); *Odle v. Calderon*, 884 F.Supp. 1404 (N.D.Cal.1995); *Odle v. Calderon*, 919 F.Supp. 1367 (N.D.Cal.1996).

Three claims remain. The court granted an evidentiary hearing on two of those claims, which hearing has been held and submitted for decision. The third claim is one of cumulative error. Those three claims are the subject of this order.

### II.

The two claims that were the subject of the evidentiary hearing and are now submitted before this court are Claims H and I. They allege the following. Claim H: Failure of the state to disclose that its mental health witness in petitioner's criminal trial, Dr. Paul Berg, was the target of a fraud investigation at the time he testified in the trial. Claim I: False testimony of Dr. Berg, which was material to the guilt and penalty determinations, was knowingly presented by the state. Each

of those claims is alleged to have violated petitioner's constitutional rights during his trial.

As stated, this court granted an evidentiary hearing on those claims. Discovery was conducted for that hearing. Shortly before the evidentiary hearing, this court conducted a preliminary hearing on the two pending claims. With respect to Claim I, this court ruled that a mere disagreement among the mental health professionals was not a legally sufficient basis to establish falsity. The falsity has to be the falsity of a fact. And it is not the function of this habeas court to examine the competence of the medical professionals, their qualifications, or whether they used insufficient or improper methods in reaching their opinions. (See transcript of August 21, 1998). Those conclusions are supported by the case authorities which are cited below in this order.

### III.

Following additional discovery, the evidentiary hearing was held on these claims. The court heard the testimony of witnesses, and exhibits were admitted into evidence. After the hearing itself, but as a part of the hearing record, petitioner submitted the depositions of witnesses Piazza, Diaz, Singer, Yancey, and McTigue, which the court has read.

Petitioner also filed a subsequent request for this court to take judicial notice of four items, to which respondent objects:

(1) One is a set of answers to interrogatories given by respondent in this proceeding. That is certainly a proper document for this court to consider. But it does not demonstrate any fact that is not otherwise established by the record.

(2) The second is a brief by Dr. Berg's attorney in a case against Berg, from which petitioner here attempts to argue that Dr. Berg knew of the state's investigation of him at the time he testified in petitioner's trial. The court has read that brief, and concludes that it does not

establish what petitioner seeks to show. The brief is on the whole a social and political polemic, devoid of any facts that are material here. The inference which petitioner attempts to draw from it is not supported by the brief. And the brief does not establish any admission *by Dr. Berg* that would be a proper subject of judicial notice.

(3) The third document is from another case, apparently on the subject of the state Attorney General telling local agencies to comply with an injunction directed to the Attorney General in that case. However, that document is simply a submission by one side in that case, and it does not establish any facts here.

(4) The fourth is a newspaper article published at the time of petitioner's conviction, purporting to quote "an anonymous juror." Such an article is not a proper subject of judicial notice.

The parties have also filed post hearing briefs, which the court has reviewed in detail.

## IV.

These claims are reviewed by this court under the following standards.

The 1996 Anti-terrorism and Effective Death Penalty Act (AEDPA) is inapplicable to this case, *Lindh v. Murphy,* 521 U.S. 320, 117 S.Ct. 2059, 2068, 138 L.Ed.2d 481 (1997). Therefore, the court reviews petitioner's constitutional claims under a *de novo* standard. *See generally* 2 James S. Liebman & Randy Hertz, *Federal Habeas Corpus Practice and Procedure,* § 30.2 at 957 (2d ed.1994); *Wright v. West,* 505 U.S. 277, 112 S.Ct. 2482, 120 L.Ed.2d 225 (1992). Even though the California Supreme Court denied petitioner's claims on the merits, this court can decide the legal questions and mixed questions of fact and law. *Id.* Because the state court held no hearing and made no written findings on these claims, there are no factual findings to which this court must defer. *(See* former 28 U.S.C. § 2254(d), according a presumption of correctness to state fact findings after a hearing on the merits and

evidenced by written findings). This court is therefore empowered to find the facts and to independently apply federal law to the facts.

A state conviction that has become final carries a general presumption of regularity. *Johnson v. Zerbst,* 304 U.S. 458, 468, 58 S.Ct. 1019, 82 L.Ed. 1461 (1938); *McKenzie v. McCormick,* 27 F.3d 1415, 1417 (9th Cir.1994); *Bellew v. Gunn,* 532 F.2d 1288, 1290 (9th Cir.1976). Accordingly, petitioner here bears the burden to establish that his conviction was affected by constitutional error. *Id.*

Because habeas proceedings are civil in nature, the usual civil preponderance of the evidence burden of proof applies. That is, petitioner bears the burden to establish the facts underlying his claims of constitutional error by a preponderance of the evidence. *Johnson,* 304 U.S. at 468–69, 58 S.Ct. 1019; *McKenzie,* 27 F.3d at 1419; *Bellew,* 532 F.2d at 1290. Respondent bears the burden of proof as to any affirmative defenses. *See* 2 Liebman & Hertz, *supra,* § 31.2 at 968.

## V.

As stated, claim H alleges the failure of the state to disclose that Dr. Berg, the state's mental health witness in petitioner's trial, was the target of a fraud investigation at the time he testified. It is undisputed from the record that Dr. Berg was under investigation by the Attorney General of the State of California for alleged Medi–Cal fraud at the time he testified.

This raises two possible concerns. The first is whether Dr. Berg was actually biased in the testimony he gave in support of the prosecution and against Odle. That is, did Dr. Berg slant his testimony in order to curry favor with the prosecutor, in hopes of it having some favorable effect on his investigation? The second is whether there has been a violation of *Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), because this potentially impeaching evidence was not disclosed

to defense counsel. The court discusses each concern in order.

## A.

■ The issue of actual bias is easily answered. The record demonstrates, with no dispute, that neither Dr. Berg nor the prosecutors knew about the investigation by the state Attorney General.

Dr. Berg testified at Odle's trial on July 11, 1983. The Medi–Cal Fraud unit of the Attorney General's office had begun its investigation of him in February 1982. In January and February of 1983, the Medi–Cal Fraud unit conducted undercover operations directed at Berg's office.

However, Dr. Berg first learned of the investigation when a search warrant was executed at his office on October 20, 1983, several months after Berg's testimony in petitioner's case. No charges were actually filed against Dr. Berg until December 1984. And the charges against him were dismissed in 1988.

Further, District Attorney Yancey's deposition testimony shows that he did not learn about the investigation until after Odle's trial. Similarly, John McTigue, who was Chief Deputy of the Contra Costa County District Attorney's Office during Odle's trial, did not learn about the investigation until Dr. Berg called to tell him that charges had been filed or were going to be filed, which was after Odle's trial.

A report identifying Dr. Berg as the target of a Medi–Cal fraud investigation was prepared by the Attorney General's office. However, there is no evidence that this report was distributed to any agency other than the Department of Health Services. In addition, Ron Bass, a former Contra Costa County deputy district attorney, moved to the Attorney General's office and worked on the same floor as Carla Singer, the Medi–Cal fraud attorney who prosecuted Dr. Berg. However, there is no evidence that Ms. Singer discussed the case against Dr. Berg with Mr. Bass.

Since the record is clear that neither Dr. Berg nor the prosecutors knew about the investigation at the time Dr. Berg testified in Odle's trial, there is no inference of actual bias.

## B.

■ A prosecutor has a constitutional duty to disclose material, exculpatory evidence to the defense, regardless of whether defense counsel makes a specific request. *United States v. Bagley,* 473 U.S. 667, 682, 105 S.Ct. 3375, 87 L.Ed.2d 481 (1985); *Brady v. Maryland,* 373 U.S. 83, 87, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). The duty extends not only to information relevant to guilt, but also to evidence that would tend to impeach the prosecution's witnesses. *Bagley,* 473 U.S. at 676, 105 S.Ct. 3375; *Giglio v. United States,* 405 U.S. 150, 154, 92 S.Ct. 763, 31 L.Ed.2d 104 (1972).

■ A breach of that duty violates due process when: (1) the prosecution suppressed impeachment evidence that was actually or constructively in its possession, regardless of the good or bad faith of the prosecutor; and (2) the suppressed evidence was material. *Brady,* 373 U.S. at 87, 83 S.Ct. 1194; *see also Kyles v. Whitley,* 514 U.S. 419, 115 S.Ct. 1555, 131 L.Ed.2d 490 (1995); *Paradis v. Arave,* 130 F.3d 385, 392 (9th Cir.1997). Evidence is material if there is a "reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." *Bagley,* 473 U.S. at 682, 105 S.Ct. 3375. A "reasonable probability" is a probability "sufficient to undermine confidence in the outcome." *Id.* The effect of the omitted evidence must be evaluated on the basis of the record as a whole. *Bagley,* 473 U.S. at 683, 105 S.Ct. 3375; *see also United States v. Agurs,* 427 U.S. 97, 112, 96 S.Ct. 2392, 49 L.Ed.2d 342 (1976). And the effect of the undisclosed evidence must be considered cumulatively, not item by item. *Kyles,* 514 U.S. at 436–37, 115 S.Ct. 1555.

■ As discussed above, neither the prosecutors nor Dr. Berg actually knew of the state's investigation. However, a *Bra-*

*dy* violation can still occur if the information was in the prosecutors' constructive possession. Thus, in *Kyles v. Whitley*, above, the Supreme Court held that state prosecutors have a duty to disclose impeachment evidence known to the police, even if the prosecutors themselves were not actually aware of the information. The Court stated:

> ... the prosecution, which alone can know what is undisclosed, must be assigned the consequent responsibility to gauge the likely net effect of all such [undisclosed favorable] evidence and make disclosure when the point of "reasonable probability" is reached. *This is turn means that the individual prosecutor has a duty to learn of any favorable evidence known to others acting on the government's behalf in the case, including the police.*

*Id.* at 437, 115 S.Ct. 1555 (emphasis added). Similarly, in *Carriger v. Stewart*, 132 F.3d 463, 479–82 (9th Cir.1997), the Ninth Circuit held that the prosecution had a duty to obtain and review the Department of Corrections file of its principal witness, and to disclose any material, impeaching evidence. Although it was unclear whether the prosecutors actually possessed the file, the court stated:

> The prosecutor's actual awareness (or lack thereof) of the exculpatory evidence in the government's hands, however, is not determinative of the prosecution's disclosure obligations ... Rather, the prosecution has a duty to learn of any exculpatory evidence known to others acting on the government's behalf.

*Id.* at 479–80 (citations omitted).

The cases variously describe the prosecutor's duty in terms of a duty to search for favorable evidence, *e.g., Kyles*, 514 U.S. at 437, 115 S.Ct. 1555, *Carriger*, 132 F.3d at 479–80; or in terms of constructive or imputed knowledge, *e.g., United States v. Endicott*, 869 F.2d 452, 456 (9th Cir.1989) (knowledge imputed); *United States v. Thornton*, 1 F.3d 149, 158 (3d Cir.1993) (in *Brady* context, "constructive knowledge" means that prosecutor "should have

known" of the existence of the information). But however the duty is described, the cases identify two general situations in which the prosecution will be held to have "suppressed" information of which it was actually unaware:

 First, knowledge will be imputed to the prosecutor where the impeaching evidence is known to other members of the "prosecution team." This includes information known to other prosecutors in the same office, a situation not present in this case. It also includes information in the hands of the police or other investigative agencies involved in the prosecution; *Kyles*, 514 U.S. at 437–38, 115 S.Ct. 1555 (police); *Endicott*, 869 F.2d at 455–56 (knowledge of promises made by Bureau of Alcohol, Tobacco and Firearms agents to witness is imputed to prosecutor, even though prosecutor may have been unaware of the promises, because the investigative officers were "part of the prosecution"); *United States v. Steel*, 759 F.2d 706, 714 (9th Cir.1985) (knowledge of information held by F.B.I. imputed to prosecutor because investigative officers were also part of the prosecution); *United States v. Butler*, 567 F.2d 885, 889–91 (9th Cir.1978) (government is responsible for non-disclosure by D.E.A. agents because they are "an arm of the prosecutor"). Again, that "prosecution team" concept does not apply in this case. The only agency which had the information was the state Attorney General's office, which did not participate in Odle's prosecution. The concept has been extended to knowledge held by an agency "interested in the prosecution." *See e.g., United States v. Wood*, 57 F.3d 733 (9th Cir.1995) (in prosecution for conspiracy to defraud Food and Drug Administration, prosecutor was required to disclose information known to FDA even though unknown to prosecutor because, as agency interested in the prosecution, FDA was "part of the prosecution" for *Brady* purposes). There is no such agency interest in this case.

 The duty to search and disclose does not extend to all agencies of the same

government. Rather, the cases limit the duty to agencies involved in the investigation or prosecution of the defendant. *United States v. Zuno–Arce,* 44 F.3d 1420, 1427 (9th Cir.1995) (the prosecutor is "deemed to have knowledge of and access to anything in the custody or control of any federal agency participating in the same investigation of the defendant"); *accord United States v. Morris,* 80 F.3d 1151, 1169–70 (7th Cir.1996) (in prosecution for mail and wire fraud, prosecutor had no duty to search for, and was not charged with knowledge of, allegedly exculpatory information held by the Office of Thrift Supervision, the Securities and Exchange Commission, or the Internal Revenue Service, where the prosecutor was unaware of the existence of the information and those agencies were not part of the investigation or prosecution team); *see also United States v. Avellino,* 136 F.3d 249, 255 (2d Cir.1998) (declining to impose unlimited duty on prosecutor to inquire of other offices not working with prosecutor's office on the case, because to do so would be to adopt a "monolithic view of the government" that ultimately would lead to prosecutorial paralysis).

■ Whether a particular government agency will be considered a part of the prosecution depends on its level of involvement and cooperation with the prosecuting agency. In this case, there is no basis for finding that the state's Medi–Cal Fraud unit was in any way involved with the murder prosecutions of district attorneys. And there was no reason at the time to believe that the unit's records would have any evidence relevant to such a prosecution.

■ Second, knowledge may be imputed to the prosecutor, or a duty to search may be imposed, in cases where a search for readily available background information is routinely performed, such as routine criminal background checks of witnesses. *See e.g., United States v. Perdomo,* 929 F.2d 967 (3d Cir.1991); *Carriger v. Stewart,* 132 F.3d 463 (9th Cir. 1997); *United States v. Auten,* 632 F.2d

478 (5th Cir.1980); *United States v. Strifler,* 851 F.2d 1197, 1201–02 (9th Cir. 1988); *United States v. Cadet,* 727 F.2d 1453, 1467 (9th Cir.1984); *accord United States v. Jennings,* 960 F.2d 1488, 1490–91 (9th Cir.1992).

■ A necessary corollary of this constructive knowledge rule is that the government has no duty to disclose what it does not know and could not have learned. *E.g., United States v. Plunk,* 153 F.3d 1011, 1027 (9th Cir.1998) (no *Brady* duty to disclose information in Federal Public Defender's files regarding prior inconsistent statements made by a government witness; *Brady* duty extends only to information in the possession or control of law enforcement personnel), *amended by,* 161 F.3d 1195, *cert. den.* —— U.S. ——, 119 S.Ct. 1376, 143 L.Ed.2d 535 (1999); *see also Hollman v. Wilson,* 158 F.3d 177, 180–81 (3d Cir.1998) (no duty to disclose witness's full criminal history where, despite a diligent search, part of the history was inaccessible); *Vega v. Johnson,* 149 F.3d 354, 363 (5th Cir.1998) (no duty to disclose pending indictment of a prosecution witness in another county; petitioner did not demonstrate that the prosecution could have discovered the indictment with a routine state and federal criminal history check).

In this case, the prosecutors' routine criminal background records check would not have included the state's Medical Fraud Unit. And even if that unit were included, the agency did not take any action of record against Dr. Berg until 1984, after Odle's trial.

This court therefore finds and concludes that there has been no *Brady* violation. The prosecutors did not know of the information. A background criminal history records check would not have disclosed it. And the agency that had the information was not involved or interested in the prosecution of Odle.

## C.

Respondent argues that in Claim H petitioner seeks the application of a "new rule"

in violation of *Teague v. Lane*, 489 U.S. 288, 109 S.Ct. 1060, 103 L.Ed.2d 334 (1989). Simply stated, *Teague* held that "new" constitutional rules of criminal procedure may not generally be applied retroactively to cases on collateral review. *Id.* at 310, 109 S.Ct. 1060. In the order granting an evidentiary hearing on Claim H, this court concluded that the retroactivity analysis "will likely turn on facts that are in dispute, and which will be developed at the evidentiary hearing." The court therefore reserved a ruling on the state's *Teague* objection until after the evidentiary hearing.

Having subsequently held the evidentiary hearing on Claim H, the court will briefly consider the *Teague* argument. As discussed above, the court has concluded that petitioner is not entitled to relief on Claim H, whether his claim is based on law that pre-dates or post-dates the finality of his conviction. The relief petitioner seeks was not "dictated by precedent" existing at the time his conviction became final. *Saffle v. Parks*, 494 U.S. 484, 488, 110 S.Ct. 1257, 108 L.Ed.2d 415 (1990). Nor has petitioner shown that the rule he seeks in Claim H would fall within any exception to the non-retroactivity principle. Since the court has found against petitioner on the merits of his Claim H, the *Teague* argument need not be considered further.

### D.

For the reasons discussed above, petitioner's Claim H is denied.

### VI.

In Claim I petitioner alleges that the prosecution violated his right to due process by knowingly presenting false testimony by Dr. Berg about petitioner's mental state at the time of the murders. He alleges that Dr. Berg gave inaccurate testimony about the characteristics of organic brain syndrome. And petitioner argues that Dr. Berg's opinions that petitioner was a sociopath, and that petitioner had

the capacity to form the requisite mental state for murder, were false and misleading. He also asserts that Dr. Berg, as a psychologist, was not qualified to render an opinion about the effect of petitioner's brain damage on his mental state. He further contends that Dr. Berg's testimony was misleading because Dr. Berg rendered his opinions without having examined petitioner.

### A.

▮ To establish a violation of due process from the use of false testimony, petitioner must prove that: (1) Dr. Berg's testimony was perjured or false; (2) the prosecution knew or should have known of the falsity; and (3) there is a reasonable likelihood that the false testimony affected the jury's decision. *United States v. Agurs*, 427 U.S. 97, 103, 96 S.Ct. 2392, 49 L.Ed.2d 342 (1976); *Napue v. Illinois*, 360 U.S. 264, 269, 79 S.Ct. 1173, 3 L.Ed.2d 1217 (1959).

At the August 21, 1998 hearing on this petition, this court ruled that petitioner could not demonstrate a due process violation by simply showing that Dr. Berg's opinion about petitioner's mental condition was *inaccurate*. Rather, because psychiatrists "disagree widely and frequently," "conflicting psychiatric opinions do not show that [an expert's] testimony was false." *Harris v. Vasquez*, 949 F.2d 1497, 1524 (9th Cir.1990)(internal quotations omitted). And this court ruled that petitioner could not establish a violation by showing that Dr. Berg's opinions that petitioner was a sociopath and that he was capable of forming the requisite mental state were simply *wrong*. *Harris*, 949 F.2d at 1524; *accord Fuller v. Johnson*, 114 F.3d 491, 496–97 (5th Cir.1997); *In re Robbins*, 18 Cal.4th 770, 800 n. 24, 77 Cal.Rptr.2d 153, 959 P.2d 311 (1998) (opinion testimony not perjured unless witness does not honestly hold the opinion to which he or she testifies); *People v. Esquibel*, 44 Cal.App.3d 591, 595–96, 118 Cal.Rptr. 748 (1975)(same).[1] This court also ruled that

---

1. This court cites California law not because it is controlling here, but because it is consis-

petitioner could not establish a constitutional violation just because Dr. Berg's testimony was based on an insufficient examination. *See Fuller*, 114 F.3d at 497 (no due process violation where expert allegedly testified falsely that the victim's death was caused by blows with a fist rather than a pipe; place to challenge expert's autopsy methodology, which allegedly was insufficient due to failure to strip brain's dura, was at trial and not on habeas); *Barefoot v. Estelle*, 463 U.S. 880, 903–04, 103 S.Ct. 3383, 77 L.Ed.2d 1090 (1983)(due process does not require that psychiatric opinion testimony be based on a personal examination of the petitioner). And it is not enough for petitioner to argue that Dr. Berg was not qualified. *Fuller*, 114 F.3d at 497 (noting that petitioner could have used academic criticism of "future dangerousness" expert, and fact that American Psychological Association had reprimanded him, to impeach the expert at trial; the criticism went to the sufficiency of the evidence, not to the expert's truthfulness).

Rather, this court ruled that the issues open for the evidentiary hearing as to the false statement prong of the due process claim (element number one of *United States v. Agurs* ) were: (a) whether Dr. Berg made any false or misleading statement of *fact;* and (b) whether Dr. Berg honestly held the opinions that he gave.

### B.

In his trial on guilt or innocence, petitioner presented three medical experts. Dr. Blum, a neurosurgeon testified that he had removed a piece of petitioner's left temporal lobe following an auto accident and life-threatening head injury in August 1973. He then performed a cranioplasty in September 1974 to cover the hole left in petitioner's skull by the prior surgery. Between the initial surgery and the cranioplasty, Dr. Blum treated petitioner several times, when petitioner came to the hospital complaining of uncontrollable temper and violent outbursts and when petitioner was involuntarily committed to the hospital.

Dr. Holtz, a neurologist, testified about the results of an electroencephalogram performed on petitioner in December 1982. The test showed that petitioner could have an epileptic seizure disorder caused by his brain injury and surgery. Such a disorder could be characterized by periods of rage and violence.

Dr. Thompson, a psychiatrist, reviewed petitioner's medical records and the records of petitioner's three involuntary commitments. He did not examine Odle. Dr. Thompson testified that people with temporal lobe injuries such as petitioner's could suffer from a seizure disorder characterized by rage outbursts, and that alcohol or drugs could exacerbate the problem. He testified that there was a reasonable medical chance that petitioner suffered from an "organic brain syndrome" and that his behavioral disturbances were beyond his control. He also testified that in his opinion petitioner was not a sociopath. Dr. Thompson did not, however, purport to express an opinion about whether petitioner's capacity was legally diminished at the time of the murders.

The jury therefore knew, from petitioner's experts, that Odle had suffered a brain injury, that he had permanent brain damage, that he had periods of violence, and that his acts could have been caused by the brain damage.

The prosecution called Dr. Berg in rebuttal. Dr. Berg agreed with the defense experts that petitioner had an organic brain syndrome due to his injury. However, in Dr. Berg's opinion, there was no evidence that petitioner's organic brain syndrome was "operative" at the time of the murders; thus there was no evidence that he suffered from diminished capacity. Rather, Dr. Berg opined that petitioner was a sociopath. Dr. Berg was extensively cross examined by petitioner's counsel, and defense counsel had the three defense experts available to assist in that cross exam-

tent with federal law.

ination or to be recalled as rebuttal witnesses.

At the evidentiary hearing on this petition, Odle attempted to establish that Dr. Berg's testimony was false or misleading in two respects: (1) His testimony that petitioner did not suffer from organic brain syndrome at the time of the crimes was allegedly misleading, because Dr. Berg did not give the jury a complete definition of that syndrome. (2) His testimony that petitioner was a sociopath was allegedly false because, at the time he gave that testimony, Dr. Berg allegedly knew that petitioner did not fit some of the criteria for that diagnosis.

Petitioner attempted to establish those two falsities by calling two new witnesses at the evidentiary hearing. One was a forensic psychologist. And the other was a neuropsychologist who has been a defense consultant in some sixty-five capital cases. Their testimony was based primarily upon a review of records from 1983 and earlier. They testified to their opinions about the alleged falsity of Dr. Berg's testimony.

Because this court concludes that Claim I must be denied because of petitioner's inability to establish element two of *United States v. Agurs* (discussed below), this court need not discuss the psychiatric testimony in any detail. But the court concludes that the testimony of petitioner's experts did not satisfy petitioner's burden of proof to show that Dr. Berg's testimony (1) was false or misleading, (2) about a fact, and (3) was known by him to be false.

 Odle's witnesses disagreed with Dr. Berg. They expressed differences of opinion with his testimony at Odle's trial. Some of those differences resulted from the definitions of terms, including some psychiatric terms used by the witnesses in this hearing but not by the witnesses in the trial. At the trial, Dr. Berg was responding to the defense experts and the terminology which they had used. Petitioner's experts in this hearing also identified differences with Dr. Berg about what measuring criteria to use under the DSM.

And they of course differed with Dr. Berg's conclusions. But those are differences of opinion about psychological criteria, definitions and conclusions, and are not differences of fact.

Indeed, petitioner's witness Dr. Golding testified that everything he said about Dr. Berg was subject to various other interpretations. For example, he said that Dr. Berg could have just made a mistake, and that some things are matters of interpretation. He also said that Dr. Berg was a competent professional. And petitioner's witness Dr. Riley said that she could not state that Dr. Berg had intentionally mislead the jury, or that he knew what he told the jury was wrong.

There was *no* evidence that Dr. Berg did not honestly and conscientiously believe the truth of the opinions that he expressed in Odle's trial.

The court therefore concludes from the testimony at trial and the testimony in the evidentiary hearing that petitioner has not sustained his burden of proof that Dr. Berg made any false or misleading statement of fact, or that he did not honestly hold the opinions that he gave at trial.

### C.

 The second requirement for establishing a due process violation from the use of allegedly false testimony is that the prosecution knew or should have known of the falsity. *Agurs*, 427 U.S. at 103, 96 S.Ct. 2392. The court concludes from the record that petitioner has not established this second requirement by a preponderance of the evidence.

Indeed, there is *no* direct evidence that the prosecution *knew* of any alleged falsity. The prosecutor testified in his deposition that he had no reason to question Dr. Berg's opinions and had no reason to believe that Dr. Berg would testify falsely. Rather, Dr. Berg's opinions appeared to be rational and had a basis in medical opinion. And Dr. Berg had extensive experience in the field. The prosecutor, in preparation

for the trial, went over the key elements of Dr. Berg's proposed testimony with him and found it to be rational and in no way troubling. Petitioner presented no contrary evidence.

Even if a more liberal "should have known" standard is applied, petitioner's evidence is still insufficient. The issue with which we are concerned is not one of objective *fact*, such as whether a person was or was not at the scene of a crime, or did or did not do a certain act. We are dealing here with differences in psychiatric *opinions*. Petitioner attempts to charge the prosecution with knowledge of the alleged falsity because he was familiar with the DSM III and had participated in forensic psychiatric seminars. But that is like charging a lawyer with knowingly presenting false testimony because he has law books and attends CLE classes. Neither are sufficient to show that the prosecutor knew that *testimony* was false. The prosecutor did demonstrate knowledge of the psychiatric issues in his cross-examination of Odle's experts at trial. But that only shows that he was sufficiently prepared to cross-examine the opinions of the adverse witnesses, not that he knowingly put on false testimony of his own witness. As stated, the prosecutor did meet with Dr. Berg to go over his anticipated testimony, as a competent trial attorney is obliged to do. Any adverse inference that might be drawn from such a trial preparation meeting — if any could be drawn — is more than offset by the uncontroverted direct evidence that the prosecutor had no reason to doubt Dr. Berg's opinions, that they appeared to be rational, and that they had a basis in medical opinion.

The court finds from the evidence that the prosecutor did not know, and had no reason to know, of the alleged false opinions of Dr. Berg.

### D.

Because of the court's conclusions that the first and second requirements of *United States v. Agurs* are not met, the court need not discuss the issue of whether the testimony was material.

The court therefore finds and concludes that petitioner has not established by a preponderance of the evidence that the prosecution violated his right to due process of law by presenting false or misleading opinion testimony by Dr. Berg. Claim I is therefore denied.

### VII.

In Claim DDD petitioner asserts that the petition should be granted because of the cumulative errors alleged in the other claims.

The Ninth Circuit has recognized the principle that even if no single error is sufficiently prejudicial to issue a writ of habeas corpus, the cumulative effect of several errors may warrant relief. *E.g. Turner v. Duncan,* 158 F.3d 449 (9th Cir. 1998); *Harris v. Wood,* 64 F.3d 1432 (9th Cir.1995); *Mak v. Blodgett,* 970 F.2d 614 (9th Cir.1992). But see *Fuller v. Roe,* 182 F.3d 699 (9th Cir.1999); and *Rupe v. Wood,* 93 F.3d 1434 (9th Cir.1996). Most of the cases applying the cumulative error principle were ones in which there were errors, but the errors were individually found to be harmless or not prejudicial.

 When a petitioner alleges that several errors of constitutional dimension prejudiced him, the general inquiry is whether the errors in combination had a "substantial or injurious effect or influence in determining the jury's verdict." *Franklin v. Duncan,* 884 F.Supp. 1435 (N.D.Cal. 1995), at 1448, 1450, 1452, 1445 (quoting *Brecht v. Abrahamson,* 507 U.S. 619, 113 S.Ct. 1710, 123 L.Ed.2d 353 (1993)). In *McDowell v. Calderon,* 107 F.3d 1351 (9th Cir.1997), *amended,* 116 F.3d 364 (9th Cir. 1997), *vacated in part on other grounds,* 130 F.3d 833, 835 (9th Cir.1997) (en banc), the Ninth Circuit recognized that a cumulative error analysis ultimately should focus on the fundamental fairness of the trial.

This court has now examined, in four opinions and orders, the numerous claims which petitioner has raised. As to each

the court has found no constitutional error. This court is convinced that Odle had a full and fair trial at both the guilt and penalty phases. A central fact presented at the trial was of course that Odle had brain damage at the time he committed the murders. However, that information was put before the jury, and they heard the conflicting opinions on the possible effect of that brain damage on Odle's mental state. The jury rendered its verdict, and this court finds no constitutional reason to upset that result, either singularly or cumulatively. Claim DDD is therefore denied.

## VIII.

It is therefore ORDERED that the petition for a writ of habeas corpus is DENIED.

Since this ORDER now resolves the fifty-six claims in Odle's petition, it is a final disposition of that petition. The stay of execution previously ordered by this court is therefore VACATED.

The Clerk of this Court is directed to immediately notify the Clerk of the United States Court of Appeals for the Ninth Circuit of the issuance of this order.